[No. 14257–7–I.   Division One.   May 13, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. JERZY JANUSZ GATALSKI, *Appellant*.

*Neubauer, Mair, Abercrombie & Hunsinger* and *Peter A. Camiel,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patrick Schneider, Deputy,* for respondent.

SCHOLFIELD, J.—Jerzy Gatalski appeals his convictions for attempted rape in the second degree and unlawful imprisonment, alleging insufficiency of the evidence and error in denying severance and in instructing the jury. We affirm.

From substantial evidence, the jury could have found the following facts. T.T. had been acquainted with Gatalski for approximately 5 months before the incident occurred giving rise to the charge of attempted rape. On December 22, 1982, T.T. and Gatalski went out on a prearranged date. About 11:30 p.m., Gatalski drove T.T. and another friend back to Capitol Hill, where he dropped off the friend and then drove to a friend's apartment with T.T.

After a short time in the apartment, Gatalski physically forced T.T., after a struggle, into the bedroom and onto the bed. Against her will, he lay on top of her, tried to force his hand under her clothing, and attempted to kiss her. She persuaded him to allow her to use the bathroom, where she escaped through a window. She then contacted a police officer and showed him the apartment she had just left.

Gatalski testified that T.T. made advances toward him throughout the evening, including kissing and touching him. He further testified that inside the apartment he at no time forced or attempted to force her to have sexual contact with him.

Gatalski was charged in a separate count with the attempted kidnapping of C.J. She testified that she was a co-worker of Gatalski's and that on May 26, 1982, Gatalski drove her and another co-worker to a residence in Lynn-

wood. Afterward, Gatalski agreed to drive C.J. to her apartment. C.J. told Gatalski what exit to take off of Aurora Avenue. When he failed to turn off at two available exits and continued driving toward his home in West Seattle, she attempted to stop the vehicle by shifting the car either out of gear or into reverse gear. When the car stalled, she attempted to jump out of the car, but Gatalski grabbed her by the hair to hold her in the car and also struck her. A police officer observed what appeared to be a struggle going on inside the vehicle and signaled the vehicle to a stop. In respect to the episode with C.J., Gatalski testified that during the ride to Seattle, she angered him by repeatedly turning up the volume on the radio. He testified that he did not hear her directions to her home and intended to drop her off in downtown Seattle. He further testified that he had no intent to keep her inside the car against her will or to have sexual relations with her. He also testified that C.J. made amorous advances toward him earlier in the evening.

Gatalski was tried by a jury for attempted rape in the second degree, in violation of RCW 9A.44.050(1)(a),[1] and attempted kidnapping in the first degree, RCW 9A.28.020[2] and RCW 9A.40.020(1)(b).[3] Gatalski moved for severance of the two counts pursuant to CrR 4.4(b), both before trial and at trial. The motion was denied. Gatalski excepted to

---

[1]RCW 9A.44.050(1) provides, in part:

"A person is guilty of rape in the second degree when, under circumstances not constituting rape in the first degree, the person engages in sexual intercourse with another person:

"(a) By forcible compulsion; . . ."

[2]RCW 9A.28.020(1) provides:

"A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime."

[3]RCW 9A.40.020(1) provides, in part:

"A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent: . . .

"(b) To facilitate commission of any felony or flight thereafter; . . ."

jury instructions stating that unlawful imprisonment was a lesser included offense of attempted kidnapping in the first degree. Gatalski also excepted to an instruction permitting the jury to consider evidence in one count as evidence in the other only for the limited purpose of determining intent of the defendant or the absence of mistake or accident by the defendant. The jury returned a verdict of not guilty of attempted kidnapping, but found Gatalski guilty of the lesser included offense of unlawful imprisonment and of attempted rape in the second degree.

## JOINDER AND SEVERANCE

CrR 4.3(a) provides, in part:

(a) **Joinder of Offenses.** Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

(1) Are of the same or similar character, even if not part of a single scheme or plan; or

(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan;

The joinder issue here is limited to whether the two offenses were "of the same or similar character". Gatalski contends they are not, citing *State v. Hentz,* 32 Wn. App. 186, 647 P.2d 39 (1982), *rev'd on other grounds,* 99 Wn.2d 538, 663 P.2d 476 (1983).

CrR 4.3 has been interpreted liberally to permit joinder of cases involving different crimes that have some similarities or connecting threads. In *Hentz,* counts of robbery, rape and intimidating a witness involving one victim were joined with counts of kidnapping and taking a motor vehicle without permission involving a second victim. The *Hentz* court reasoned joinder was proper because all counts arose out of sexual assaults upon female victims kidnapped from the same general locality. Both assaults also involved use of an automobile and threatened use of a weapon.

In *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934 (1972), two counts of murder,

four counts of robbery and an assault count, involving offenses that occurred over a period of 1½ years, were joined because robbery was involved in all of them.

In this case, the attempted rape and the kidnapping counts both involved the use of force against female victims to overcome resistance and both had sexual connotations. While the facts giving rise to the kidnapping charge did not reach the point of a sexual attack, the evidence suggests no other explanation for Gatalski's refusal to allow C.J. out of his car. Another similarity between the two episodes was the testimony of Gatalski that both C.J. and T.T. made voluntary overtures of a romantic nature toward him.

The trial court correctly concluded that the two episodes were of a similar character and did not err in permitting joinder.

While counts can be properly joined for trial initially, a motion to sever under CrR 4.4(b)[4] addresses the issue of prejudice to the defendant notwithstanding proper joinder. Grant or denial of a motion to sever is discretionary with the trial court, whose decision will be reversed only for abuse of that discretion. *State v. Thompson,* 88 Wn.2d 518, 564 P.2d 315 (1977). Abuse of discretion occurs when the ruling of the trial court is manifestly unreasonable or discretion was exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971). The defendant has the burden of proving an abuse of discretion. *State v. Hentz, supra* at 190.

█ The areas of possible prejudice from joinder of several offenses in one trial are outlined in *State v. Smith, supra,* and *State v. Kinsey,* 7 Wn. App. 773, 502 P.2d 470 (1972). Factors to consider in deciding severance issues are

---

[4]CrR 4.4(b) provides as follows:

"**Severance of Offenses.** The court, on application of the prosecuting attorney, or on application of the defendant other than under section (a), shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

summarized as (1) the strength of the State's evidence on each count, (2) the clarity of defenses to each count, (3) whether the court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of the evidence of the other crimes, even if they had been tried separately or never charged or joined. *State v. Kinsey, supra* at 776.

Gatalski argues that the State's evidence on each count was weak and that the evidence on each count would not have been admissible in a separate trial of the other count.

As to the strength of the State's case, we have reviewed the testimony of T.T. and Officer Ronning supporting the attempted rape conviction and the testimony of C.J. and three police officers supporting the unlawful imprisonment conviction. We find the evidence persuasive. We disagree with the contention that the evidence in each count, standing alone, is weak and unconvincing.

The more difficult question raised by Gatalski is whether the evidence in each count was admissible in the trial of the other count under ER 404(b).[5] If the evidence was admissible, the failure to sever did not prejudice Gatalski.

*State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982), a case not involving severance issues, provides the analytical framework for determining the admissibility of evidence under ER 404(b). In that case, evidence of a prior attempted rape of another woman 4½ years earlier was held inadmissible in a prosecution for second degree rape, where the defense was consent to the admitted sexual intercourse. The Supreme Court ruled that in order to admit evidence under ER 404(b), the trial court must (1) determine that evidence is relevant to an issue such as motive, opportunity, intent, etc.; (2) determine that any prejudicial effect is outweighed by the probative value; and

---

[5]ER 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

(3) properly limit the purpose for which the jury may consider the evidence. The trial court admitted the evidence as bearing on motive and intent. The Supreme Court held that neither motive nor intent was relevant because sexual intercourse with the victim was conceded by the defendant.

Motive and intent were at issue in this case. The trial court instructed the jury in instruction 6:

> A separate crime is charged in each count. You must decide each count separately as if it were a separate trial. Your verdict on one count should not control your verdict on any other count.
>
> Evidence introduced on one count may not be considered by you in deciding the other count, except for the limited purpose of determining whether it tends to prove the intent of the defendant or absence of mistake or accident by the defendant.

Under *Saltarelli,* the initial issue is whether the evidence of each count was relevant to the factual issues to be decided by the jury in the other count. ER 401 defines relevant evidence.

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Is evidence of the attempted rape relevant to any element of kidnapping? We conclude that it is. Count 2 expressly charged Gatalski with attempted kidnapping "with intent to facilitate commission of the felony of rape". The evidence of the attempted rape is relevant to the issues of intent to abduct to facilitate commission of a rape and the absence of mistake or accident.

The evidence shows a concerted effort by Gatalski to hold C.J. in his car against her will as he traveled toward his home in West Seattle. In that effort, he held her in the car by the hair of her head and slapped her in the face. The attempted rape of T.T. logically supports the theory that his intent in holding C.J. was to get her to his apartment in West Seattle, where he could attack her sexually. Use of the evidence in this manner is more directly probative than

merely showing a propensity, proclivity or inclination to commit rape. It explains violent conduct toward C.J., which, without the evidence, remains unexplained. Without evidence of the attempted rape, the jury could only assume from the overall circumstances and the absence of any other explanation that rape was the ultimate objective. Evidence of the attempted rape supplies a missing ingredient in the State's effort to prove intent to abduct to facilitate a rape.

Gatalski's explanation for not taking either of the two exits from Aurora Avenue that were pointed out to him by C.J. as leading to her address on Capitol Hill was that the radio was playing loudly and he did not understand her directions. Evidence of the attempted rape logically and directly tends to rebut this claim of mistake or accident. The evidence supplies an explanation for failing to take the exits that is completely inconsistent with Gatalski's explanation.

The evidence of the attempted kidnapping was relevant to prove intent in the attempted rape case. The State had the burden of proving an attempt to engage in sexual intercourse by forcible compulsion. RCW 9A.44.050. In instruction 7, the trial court instructed the jury:

> A person commits the crime of attempt to commit rape in the second degree when, with intent to commit that crime, he or she does any act which is a substantial step toward the commission of that crime.

The State had the burden of proving intent to commit rape. The conduct of Gatalski toward C.J., having no other apparent purpose than to get her to his apartment where he could commit a sexual assault upon her, was inconsistent with, and rebutted directly, Gatalski's testimony that he had no intention of taking advantage of T.T. or forcing her to do anything against her will.

*Saltarelli* does not require severance[6] here because in

---

[6]Severance questions involve considerations of the judicial economy gained when cases can be tried together; these considerations are not present in a pure

*Saltarelli* there was no issue of intent. Here, intent is a critical issue in both counts. The opinion in *Saltarelli* acknowledges, where appropriate, the relevance of other similar acts on the issue of intent, stating at pages 365–66:

> In appropriate cases, evidence of prior crimes may be relevant to the issue of intent. A leading treatise explains that "the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent." (Footnote omitted.) 2 J. Wigmore, *Evidence* § 302, at 245 (rev. 1979). Thus, in a charge of assault with intent to commit rape, Wigmore acknowledges that "former acts of the kind are relevant to negative the intent as being of any other kind than to commit rape." 2 J. Wigmore § 357, at 334.

In both cases, Gatalski arranged a voluntary social engagement with young women of approximately his own age and was friendly and ingratiating throughout the evening until he got them alone with him. He then became very aggressive and forceful and apparently was willing to use a great deal of force, if necessary, to control them. The use of physical force against both women to overcome resistance in such comparable circumstances and the sexual overtones present in both episodes clearly add support to the State's effort to prove Gatalski's intent in both counts.

## ER 403

██ The next step for the trial court in determining admissibility of evidence under ER 404(b) is to consider its potential for prejudice to the defendant. ER 403 authorizes exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice". The trial court has broad discretion in administering this rule and its judgment in the balancing process will be overturned only for manifest abuse. *State v. Valladares,* 31 Wn. App. 63, 72, 639 P.2d 813 (1982), *rev'd in part on other*

---

ER 404(b) case. We do not hold or imply that severance is required in every case where the evidence of one count would not be admissible in a separate trial of the other counts.

*grounds,* 99 Wn.2d 663, 664 P.2d 508 (1983); *United States v. Robinson,* 560 F.2d 507, 515 (2d Cir. 1977), *cert. denied,* 435 U.S. 905 (1978) (holding that trial court's discretion should be upheld in Fed. R. Evid. 403 cases unless the court acts arbitrarily or irrationally). *See also* 5 K. Tegland, Wash. Prac. § 105, at 246 (2d ed. 1982).

"Unfair prejudice" has not been defined in ER 403 or in the decisions applying it. *See* Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence,* 58 Wash. L. Rev. 497 (1983).

In passing upon the severance issue, the issue of undue prejudice was argued after the trial judge asked defense counsel, "What is the prejudice to the defendant in terms of his defense?" Other comments by the judge indicated she believed the severance issue presented a close question. The court also took the precaution of instructing the jurors that they could use the evidence in one count in deciding the other count only for the limited purpose "of determining whether it tends to prove the intent of the defendant or absence of mistake or accident by the defendant." Instruction 6.

We note the comment to ER 403 also suggests the availability of other means of proof as a factor to weigh in deciding ER 403 issues. Here, the State had to rely on the testimony of the victims as to what happened in the apartment and in the car. Evidence of the other count was the only source of additional evidence on the issue of intent and absence of mistake or accident.

Thus, the trial court properly weighed the prejudicial effect against the probative value and properly instructed the jury in its consideration of the evidence. We conclude the evidence of the crimes would have been admissible under ER 404(b) if the counts had been tried separately.

Citing *State v. Jackson,* 102 Wn.2d 689, 689 P.2d 76 (1984), Gatalski contends the trial judge erred in failing to state clearly on the record the reasons for admitting the evidence. We do not reach the merits of this contention because we deem the rule in *Jackson* not to be retroactive,

following the reasoning of *State v. Rhoads,* 101 Wn.2d 529, 535, 681 P.2d 841 (1984).

In summary, having considered the strength of the State's evidence, the jury instructions, and admissibility of evidence of the counts under ER 404(b), we conclude that the trial court did not abuse its discretion in denying severance.

### LESSER INCLUDED OFFENSE

A defendant is entitled to an instruction on a lesser included offense if each of the elements of the lesser offense is a necessary element of the greater offense and the evidence in the case will support a finding that the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978). Gatalski contends unlawful imprisonment is not a lesser included offense of attempted kidnapping in the first degree, and therefore his conviction for unlawful imprisonment should be reversed. He argues that, while restraint of a person is required for the completed crime of unlawful imprisonment, RCW 9A.40.040, restraint is not required for *attempted* kidnapping.

The State responds that under *State v. Workman, supra,* a crime can be a lesser included offense under the facts of a particular case even if it would not necessarily be so in all cases. We agree with the State.

In holding that unlawfully carrying a weapon was a lesser included offense of attempted first degree robbery, the Supreme Court in *Workman* was not applying strictly the rule that each of the elements of the lesser offense must be a *necessary* element of the offense charged. Being armed with a deadly weapon is not a necessary element of first degree robbery in all cases. The crime can be completed by displaying what appears to be a firearm or other deadly weapon, or by inflicting bodily injury. Bodily injury can be inflicted without the use of a weapon.

However, the court emphasized that its holding was based on "the facts of this case." *Workman,* at 447. The evidence was clear in *Workman* that the defendants had

unlawfully displayed a firearm, in violation of RCW 9.41-.270.

A criminal attempt is defined in RCW 9A.28.020:

(1) A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

A definition of "substantial step" is set forth in WPIC 100.05:

A substantial step is conduct which strongly indicates a criminal purpose and which is more than mere preparation.

This definition is consistent with language in *Workman,* at 451–52.

In the case before us, it is clear the evidence supports a finding of unlawful restraint of another, necessary to a conviction of unlawful imprisonment. Unlawful restraint of another is a necessary element of kidnapping in the first degree. Applying the reasoning employed in *Workman* to the facts of this case, we conclude unlawful imprisonment was properly submitted to the jury as a lesser included offense of attempted kidnapping because the substantial step taken was actual unlawful restraint of the intended victim. Gatalski's argument that it is possible for one to attempt a kidnapping without actually reaching the point of unlawfully restraining another, while factually correct, does not preclude the instruction under the particular facts of this case.

### SUFFICIENCY OF EVIDENCE

Gatalski contends there was insufficient evidence to sustain the convictions on both counts. Gatalski argues that the State had the burden of proving an intent to rape in each count and that there was insufficient evidence from which the jury could find the required intent.

The test for sufficiency of the evidence is whether, after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential ele-

ments of the charged offense. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). The jury was entitled to believe the testimony of the complaining witness in each count. One has only to review the testimony in this case to recognize there was sufficient evidence to sustain conviction on both counts. We find no merit in this assignment of error.

Judgment affirmed.

CORBETT, C.J., and WEBSTER, J., concur.

After modification, further reconsideration denied July 26, 1985.

Review denied by Supreme Court October 18, 1985.