[No. 13965-1-II.    Division Two.    December 8, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK S.
WILSON, *Appellant.*

*Mark S. Wilson,* pro se, and *James L. Reese,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky, Deputy,* for respondent.

PETRICH, J.* — Mark Wilson appeals his convictions of four counts of assault in the first degree, RCW 9A.36.011-(1)(a), and one count of harassment, RCW 9A.46.020. Wilson

---

*Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

makes 20 assignments of error, challenging the trial court's denial of his motions for severance of the harassment charge from the assault charges; the trial court's allowing the State to amend the information on the day of trial to add two counts of assault in the first degree for acts against two intended victims who were not struck by bullets; the sufficiency of the evidence to support his convictions for assault; the denial of his motion for a new trial based on a witness's reference to rumors about him, combined with prosecutorial misconduct in closing argument; and the imposition of a 240-month sentence. In his pro se brief, Wilson supplements argument on the severance issue, claiming that because the evidence in support of the harassment count was unrelated to the evidence in support of the assault charges, and because the offenses were not the same, the proper standard of review is not whether the denial of the severance motion was an abuse of discretion, but rather whether mandatory severance was required. We reverse the convictions for the two counts of first degree assault against the unintended victims, affirm the convictions for the first degree assaults against the intended victims, affirm the harassment conviction, and remand for resentencing.

During the evening of January 5, 1990, Mark Wilson was in the Old Town Tavern in Silverdale, Washington, when he got into an argument with a male patron. Freda Jones, an employee of the tavern, told the men their behavior was inappropriate. Wilson then got into a "loud discussion" with another patron. Jones again told Wilson that his behavior was inappropriate. When Wilson got into a third loud argument, Jones told him to leave the tavern, which he did.

After talking with Patty Becker and Merry Judd, who were sitting at the bar close to a plate glass window, Jones went to the back of the tavern to put Wilson's name on the so called "86" list, a list of persons not allowed back in the tavern without the owner's permission. Subsequently, Wilson returned to the bar and Jones told him to leave. Wilson replied, "You will never leave this tavern alive tonight."

While leaving, Wilson turned to Judd and told her angrily, "Merry, don't leave the bar alone."

Minutes later, three or four bullets came through the plate glass window barely missing Judd and Becker. A bullet did hit Brian Hurles, an employee, and another hit James Hensley, a patron. Based on these events, the State ultimately charged Wilson with four counts of assault in the first degree, two for assaulting Hurles and Hensley on a theory of transferred intent and two for assaulting Judd and Jones.

The State also charged Wilson with one count of harassment, arising out of Wilson's involvement with the volunteer fire department of Fire District One where Wilson had served during 1979 and 1980. After leaving to serve in the military, Wilson reapplied for a firefighting position in 1982. However, no positions were available, and his application was denied.

Between 1980 and 1988, Wilson had several confrontations with volunteer firefighters at a tavern he frequented. Twice Wilson pointed his index finger at the firefighters, as if it were a gun. At other times and places, he "flipped them off". In 1988, Wilson made a late night phone call to the assistant fire chief demanding that the assistant fire chief remove Wilson's photograph from the front lobby hall. When the assistant fire chief refused to remove the photograph, Wilson said he would get back at them and make it "tough" on the firefighters.

On January 1, 1990, Wilson went to the firehouse, asking if a certain paramedic was on duty. When told no, Wilson angrily swore at the firefighters and said, "I am going to get my .9 [sic] millimeter and blow you a******* away." And he said "that he would come back and get his nine, or gun, and come back and kill [the firemen]". The firefighters called the police and Wilson left, but returned 10 or 15 minutes later. He banged on the door and windows and screamed epithets and that he was going to kill them. The firefighters again called the police, who, upon arrival, told Wilson to leave. Wilson complied, but later telephoned the fire station. The firefighters put the call on the speaker phone so they could

all hear it. Wilson said the police could not help the firefighters and he was going to kill them.

Wilson moved before trial to sever the harassment charge from the assault charges. The trial court denied the motion. Wilson renewed his motion on the morning of trial and again at the close of the State's case in chief. The trial judge denied these motions as well.

On the day of trial, the court granted the State's motion to amend the information from two counts of assault in the first degree to four counts by adding assaults against the intended victims, Judd and Jones, on the theory that Wilson placed them in apprehension and fear of bodily injury. Although Wilson's counsel resisted the motion, he did not request a continuance. The case then went to trial and the jury found Wilson guilty on all counts. The trial court sentenced Wilson to 240 months' incarceration, all counts being served concurrently.

## SEVERANCE

Wilson argues that the trial court erred in denying his motions to sever the harassment charge from the assault charges. While Wilson's assignment of error. is to the trial court's denial of his motions to sever, the parties argued and the court ruled on the propriety of joinder under CrR 4.3 and of severance under CrR 4.4. Thus, we consider both issues. As this court previously noted:

> We first address the joinder issue, keeping in mind that whether all five counts were properly joined under CrR 4.3 is a question of law subject to full appellate review. *Cf. United States v. Werner*, 620 F.2d 922 (2d Cir. 1989) (construing analogous Fed. R. Crim. P. 8). Moreover, if joinder was proper, the question of severance under CrR 4.4 is within the discretion of the trial court. *State v. Thompson*, 88 Wn.2d 518, 564 P.2d 315 (1977); *State v. Weddel*, 29 Wn. App. 461, 629 P.2d 912 (1981). Hentz argues that the two incidents were not sufficiently alike to permit joinder under "the same or similar character" provision of CrR 4.3(a)(1) urged by the State. We disagree.
>
> Some courts and commentators express the view that a very narrow construction of the "same or similar character" provision is desirable. They reason that such joinder is inherently prejudicial. *See, e.g., United States v. Foutz*, 540 F.2d 733 (4th

Cir. 1976); 1 C. Wright, *Federal Practice* § 143, at 317-18 (1969). We believe the better view is to permit a broad joinder. *See State v. Thompson, supra.* This position comports with the important public policy of conserving judicial and prosecutorial resources. *United States v. Werner, supra.* Where it appears that otherwise proper joinder will unduly prejudice a defendant, it is still possible for the trial court to order severance under CrR 4.4.

. . . .

Although
> joinder of counts should never be utilized in such a way as to unduly embarrass or prejudice one charged with a crime, or to deny him a substantial right[,]

*Weddel,* 29 Wn. App. [at] 464, we are mindful that it is the defendant who bears the heavy burden of demonstrating that the trial court's action was an abuse of discretion. *See United States v. Ochs,* 595 F.2d 1247 (2d Cir.), *cert. denied,* 444 U.S. 955, 62 L. Ed. 2d 328, 100 S. Ct. 435 (1979).

(Footnotes omitted.) *State v. Hentz,* 32 Wn. App. 186, 189-90, 647 P.2d 39 (1982), *rev'd on other grounds,* 99 Wn.2d 538, 663 P.2d 476 (1983).

Wilson argues that the assault charges and the harassment charges are not of the "same or similar character", because proof of each involved different witnesses, different elements, different days, different locations, and only one involved the use of a weapon. Thus, he argues that the charges should not have been joined as a matter of law. We disagree.

CrR 4.3 provides for the joinder of offenses when the offenses "(1) Are of the same or similar character, even if not part of a single scheme or plan . . .". As Judge Friendly noted in *United States v. Werner,* 620 F.2d 922, 926 (2d Cir. 1980):

> The question of the propriety of joinder under Rule 8 and of refusal to grant relief from prejudicial joinder under Rule 14 are quite different in nature, although some decisions tend to obscure this. The former is a question of law, subject to full appellate review; if the joinder was not permitted by Rule 8, a conviction must be reversed unless the error was harmless. In contrast, the grant of relief under Rule 14 lies within the discretion of the trial judge and refusal to sever counts or defendants properly joined under Rule 8 will be reversed only if discretion was abused . . ..

(Footnote omitted.)

█ While the Washington Supreme Court has blurred the distinction between joinder and severance so carefully drawn in federal law by referring to it as a broad rule, we do not believe the former joinder rule so broad as to change the standard of review from that of an error of law to one of an abuse of discretion. *See Thompson*, 88 Wn.2d at 525 (trial court has *considerable discretion* in matters such as joinder of offenses and declares CrR 4.3 as a liberal joinder rule without reference to CrR 4.4), *overruled on other grounds in State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992); *State v. McDonald*, 74 Wn.2d 563, 445 P.2d 635 (1968). With these distinctions in mind, we first consider whether the offenses were properly joined and then consider whether denial of severance so unduly prejudiced the defendant as to amount to an abuse of the trial court's discretion.

We are satisfied that the offenses of harassment and assault in the first degree are of the same or similar character and, thus, subject to joinder as authorized by CrR 4.3(a)(1). The Legislature itself has stated that "harassment", as used in the chapter declaring harassment a criminal offense, specifically includes the offense of assault in the first degree, RCW 9A.46-.060(4).

Neither do we find that the court abused its discretion in refusing to sever the harassment count from the assault counts. A denial of a CrR 4.4(b) motion to sever multiple charges is reviewed for a manifest abuse of discretion. *State v. Markle*, 118 Wn.2d 424, 438, 823 P.2d 1101 (1992); *State v. Lane*, 56 Wn. App. 286, 298, 786 P.2d 277 (1989). Defendants seeking severance have the burden of demonstrating that a trial involving all counts would be so manifestly prejudicial as to outweigh the concern for judicial economy. *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990).

█ Wilson argues that the jury cumulated evidence presented on the assaults and the harassment, resulting in unfair prejudice. In *State v. Gatalski*, 40 Wn. App. 601, 606-07, 699 P.2d 804, *review denied*, 104 Wn.2d 1019 (1985), the court enumerated the factors showing prejudice as (1) the strength of the State's evidence on each count; (2) the clarity

of defenses to each count; (3) the propriety of the court's instruction to the jury to consider the evidence of each crime separately; and (4) the admissibility of the evidence of the other crimes, even if they had been tried separately or never charged or joined. *Gatalski,* at 606-07.

Here, the State presented strong independent evidence in support of each charge; Wilson's defenses were not obscured; and the trial court properly instructed the jury that a separate crime for each count was charged, that the counts were to be considered separately, and that a verdict on one count does not control the verdict on another count. *See State v. York,* 50 Wn. App. 446, 450, 749 P.2d 683 (1987) (the court referred to the separate counts instruction in upholding a trial court's denial of a severance motion and noted that the jury is presumed to follow instructions), *review denied,* 110 Wn.2d 1009 (1988).

Wilson also argues that the trial court failed to weigh the evidence before denying his motion for severance. *Bythrow,* 114 Wn.2d at 722 (prejudice to defendant must outweigh the concerns for judicial economy). Here, the trial court found little prejudice to Wilson, and any prejudice was cured with an appropriate jury instruction. The trial court did not abuse its discretion.

Wilson also asserts that the trial court erred when it stated that it was bound by the pretrial decision denying Wilson's motion for severance. To the contrary, the trial court said it would adhere to the pretrial ruling and if during the trial it became apparent that Wilson was prejudiced, it would grant the severance motion. We find no error.

## TRANSFERRED INTENT

Wilson challenges the propriety of the State's theory of transferred intent and the corresponding instructions given to the jury. He contends that the use of a transferred intent to convict under assault in the first degree of unintended victims (Hurles and Hensley) precludes the use of that same intent to convict for assault in the first degree of intended victims (Judd and Jones).

The doctrine of transferred intent has been part of the Washington common law since 1896. In *State v. McGonigle*, 14 Wash. 594, 602, 45 P. 20 (1896), the Supreme Court adopted the rule described in 1 J. Bishop, *Criminal Law* § 328 (8th ed. 1892):

> "If one, with the intent to kill a particular individual, shoots or strikes at him, and by accident the charge or blow takes effect on another whom it deprives of life, . . . the party unintentionally causing the death is guilty, the same as if he had meant it, of the felonious homicide."

The court held that rule applied to homicide, arson, robbery and nearly all other crimes the perpetration of which is malum in se. *McGonigle*, at 602. In *State v. Clinton*, 25 Wn. App. 400, 606 P.2d 1240, *review denied*, 93 Wn.2d 1026 (1980), the court upheld a conviction of assault in the second degree where the defendant missed his intended victim and struck the victim's spouse instead. *See generally* Model Penal Code § 2.03(2) (1985); 2 C. Torcia, *Wharton on Criminal Law* § 144 (14th ed. 1979).

The case most similar to the present is *State v. Cogswell*, 54 Wn.2d 240, 339 P.2d 465 (1959), where the defendant was convicted of three counts of assault in the first degree. The two counts relevant here involved a bullet shot into the defendant's wife who had thrown her body over her daughter to protect her from the defendant. The bullet passed through his wife and injured the daughter. The trial court instructed the jury that it could transfer the intent to kill the wife to support a charge of intent to kill the daughter. The Supreme Court held the instruction to be superfluous because there was sufficient evidence that the defendant had a separate intent to kill both his wife and his daughter, so the shooting of both with one bullet was of no consequence. Thus, the court did not address the issue presented here, but reserved it for another case.

Here, applying the doctrine of transferred intent, the trial court allowed the State to use its proof of Wilson's intent to inflict great bodily harm on Jones and Judd as proof of an

intent to inflict great bodily harm on Hurles and Hensley, thus elevating the assaults on the unintended victims to assault in the first degree. However, the trial court also allowed the State to use that same proof to support charges of first degree assault against Jones and Judd. The issue presented is whether the doctrine of transferred intent allows the State to prove a defendant's specific intent toward one victim, exacting criminal responsibility for the offense against that victim, and to exact the same degree of criminal responsibility for the offense against another victim.

The doctrine of transferred intent was created to avoid the specific intent requirement and thus hold the defendant accountable for the consequences of his behavior when he injures an unintended victim.

> The transferred intent doctrine is a legal fiction established to attribute liability to a defendant who, intending to kill one person, mistakenly kills another instead. (*People* v. *Suesser* (1904) 142 Cal. 354, 367 [75 P. 1093].) The purpose of the rule is "to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims. . . . The transferred intent doctrine is born of the sound judicial intuition that such a defendant is no less culpable than a murderer whose aim is good." (*People* v. *Birreuta* (1984) 162 Cal. App.3d 454, 460 [208 Cal.Rptr. 635].)
>
> Where *both* the intended and unintended victim are killed, one court has held the transferred intent rule is inapplicable because this purpose would not be served. That is, because the defendant could be directly prosecuted for killing the intended victim and separately charged for killing the unintended victim in accordance with his or her level of culpability, the rule is unnecessary. ([*Birreuta*, at 460.]; contra, *People* v. *Carlson* (1974) 37 Cal.App.3d 349 [112 Cal.Rptr. 321].)

*People v. Calderon*, 232 Cal. App. 3d 930, 935-36, 283 Cal. Rptr. 833, *review denied* (Oct. 23, 1991).

The doctrine of transferred intent most often appears in homicide cases where someone other than the intended victim is killed as a result of the accused's poor aim. Typically, the facts support only one count of murder because the intended victim escapes fatal injury. In those cases, the courts apply a legal fiction to insure that the accused is punished to

a degree commensurate with his level of mental culpability at the time of the offense. An assault is unlike a homicide case where death of the victim is the sine qua non of the offense. Varying consequences on the victim resulting from the accused's assaultive behavior may prove the elements of assault. As the jury instructions here indicate, an assault may be established if the accused's assaultive behavior creates apprehension and fear of bodily injury in the victim or an assault may be established if the accused's assaultive behavior results in the victim being struck or shot.

■ Under the State's theory, Wilson committed first degree assault when, with intent to inflict great bodily harm on Jones and Judd, he assaulted them with a firearm by placing them in apprehension and fear of bodily injury, the actual infliction of such injury being unnecessary. The intent to inflict great bodily harm elevated the assault against Jones and Judd to assault in the first degree. Consequently, by holding Wilson accountable for this behavior, the State has exacted punishment commensurate with his level of mental culpability. There is no reason justifying use of the legal fiction known as transferred intent to prove that Wilson assaulted Hurles and Hensley in the first degree. The State tried, convicted, and sentenced Wilson for offenses against his intended victims, the seriousness of which was consistent with his state of mind. It was error for the trial court to allow proof of Wilson's intent to inflict great bodily harm against Jones and Judd to support charges of assault in the first degree against Jones and Judd and against Hurles and Hensley.[1]

## SUFFICIENCY OF THE EVIDENCE

■ Wilson's supplemental pro se brief challenges the sufficiency of the evidence in support of the assault convictions, specifically, the evidence of whether he had the requisite intent to inflict grievous bodily harm on his intended vic-

---

[1]The State could have chosen to charge Wilson for the assaults against the unintended victims without using the theory of transferred intent, *i.e.*, assault in the second degree.

tims. Insufficient evidence in support of the verdict would necessitate acquittal rather than remand for a new trial. U.S. Const. amend. 5; Const. art. 1, § 9; *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978).

In *State v. Little*, 116 Wn.2d 488, 491, 806 P.2d 749 (1991), the court said:

> Inquiring into the sufficiency of the evidence to support a conviction does not require the reviewing court to determine whether it believes the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations omitted.) *Little*, 116 Wn.2d at 491 (quoting *Seattle v. Slack*, 113 Wn.2d 850, 784 P.2d 494 (1989)). *See also State v. Scoby*, 117 Wn.2d 55, 61, 810 P.2d 1358, 815 P.2d 1362 (1991).

A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. *State v. Sanchez*, 60 Wn. App. 687, 693, 806 P.2d 782 (1991) (citing *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980)). Upon reviewing the record, we find substantial evidence to support the jury's finding that Wilson was guilty of assaulting Jones and Judd as charged.[2] The State met its burden of proof with testimony, physical evidence, and circumstantial evidence relating to all elements and counts. More particularly, the State presented evidence that Wilson threatened to kill the two women, and that after being forced to leave the tavern, fired a weapon into the tavern at or near those same women. This is sufficient evidence from which a jury could conclude that he acted with the requisite intent.

---

[2]"RCW 9A.36.011 Assault in the first degree. (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

"(a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or . . .."

### DENIAL OF MISTRIAL

Wilson claims that the trial court should have granted his motion for a mistrial for two reasons: First, that an order in limine was violated when a firefighter testified about "rumors" about Wilson; and second, that the prosecutor's remarks in closing argument constituted misconduct.

When one of the firefighters was asked if he was afraid of Wilson, he responded "[n]ot so much afraid that he was liable to hurt me, but I heard a rumor that — ". Wilson's counsel immediately objected and the trial court sustained the objection. Later Wilson moved for a mistrial. The court, in denying the motion, stated:

> The witness started to mention rumor. He was cut off by an objection. The objection was sustained. It happened so quickly, I am not sure that all the members of the jury even picked up on it.
> In any event, he is speaking of the fact that he wasn't angry, that he heard a [rumor], and certainly the rumor wasn't sufficient to make him frightened. So it is not of too serious a consequence from the defense standpoint in that light.
>
> . . . .
> I just have to conclude that it is not serious enough to grant a mistrial at this point. I don't think the defendant has been prejudiced unduly by that, if prejudiced at all.
> If the defense wants it, I would offer, and would have given today — except we set this over after the jury had gone — a cautionary instruction.

■ A trial judge is vested with broad discretion in granting a new trial and the court's decision will not be disturbed absent an abuse of that discretion. *State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981). Here, the trial court gave a well reasoned explanation for its decision, and offered to give a cautionary instruction. We cannot say that the trial court acted on untenable grounds or for untenable reasons, thus we find no abuse of discretion.

Wilson also claims that the prosecutor engaged in misconduct during her closing argument, which denied him a fair trial. The following occurred:

[STATE]: Brian Hurles looked out the window. And, no, he cannot say for certain that the defendant is the one he saw outside the tavern shooting —

[DEFENSE COUNSEL]: Your Honor, I am going to —

[STATE]: That he saw a reflection.

[DEFENSE COUNSEL]: I am going to object to the terminology "for certain". I believe Mr. Hurles' testimony was that he couldn't in any way identify who did the shooting.

THE COURT: Members of the jury, as I have instructed you, it is up to you to decide what evidence was produced and what conclusions to draw from that.

■ This court must reverse for prosecutorial misconduct when there is a substantial likelihood that the argument affected the jury verdict. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 1363 (1993). The defense has the burden of proving such prejudice. *State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986).

Here, the prosecutor's statement was not misconduct and any prejudice that may have occurred was cured with the court's instruction. Moreover, the prosecutor's statement was an accurate portrayal of Hurles' testimony. He testified that he did not see Wilson's face, but that he knew Wilson fired the gun because he saw his clothing, his hairstyle, and his figure, and they matched Wilson's.

Our holding disposes of the other issues raised. The judgments for the harassment charge and for the two counts of assault against Jones and Judd are affirmed. The two counts of assault against the unintended victims are reversed and the case is remanded for resentencing.

SEINFELD, A.C.J., and MORGAN, J., concur.

Review granted at 123 Wn.2d 1025 (1994).