# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46030-1-II |
| Respondent, | |
| v. | |
| GEORGE E. TAYLOR, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — George E. Taylor appeals his convictions and sentence, arguing that (1) the trial court erred by denying his motions to sever the charges of reckless endangerment and making a false statement to a public servant (counts I and II) from the drug related charges (counts III, IV, V, and VI);[1] (2) the State failed to present sufficient evidence to prove that Taylor possessed pseudoephedrine with intent to manufacture methamphetamine; and (3) the trial court erred by failing to enter written findings of fact and conclusions of law following the CrR 3.5 hearing.[2] In a Statement of Additional Grounds (SAG),[3] Taylor asserts, "The Judge that heard my case was at

---

[1] This opinion will refer to the reckless endangerment charge and the making a false or misleading statement to a public servant as the "reckless endangerment charges" and all other charges as the "drug-related charges."

[2] Taylor raised numerous other arguments, but because we reverse on severance grounds, we do not address his other arguments.

[3] RAP 10.10.

one time a lawyer me and my wife had used." SAG at 1. We hold that the trial court abused its discretion by denying Taylor's motions to sever the reckless endangerment charges from the drug related charges. Therefore, we reverse and remand for proceedings consistent with this opinion.

FACTS

Taylor lived next to Patricia Spencer. On March 7, 2012, Spencer was in her living room and heard gunshots nearby. Later that day, Spencer's granddaughter discovered a bullet on her bedroom floor and reported it to law enforcement. Skamania County Sheriff's Deputy Steve Rassmussen came to Spencer's home and investigated the stray bullet. Deputy Rassmussen and other officers asked Spencer's neighbors whether anyone had been shooting. Taylor told the officers that he had not been shooting. The officers suspected that the bullet came from Taylor's property, and they prepared a search warrant for Taylor's property.

On March 14, officers executed the search warrant. As officers entered Taylor's home, Taylor came out of his bedroom and was arrested for reckless endangerment. Taylor then told officers that he had been shooting his rifle on his "range." Verbatim Report of Proceedings (VRP) (Mar. 10, 2014) at 122. Taylor pointed into his bedroom to the rifle that he had been shooting, which officers could see from the living room. Officers went into Taylor's bedroom to retrieve the rifle and saw glass pipes on the floor and bed, which officers recognized as generally used for smoking cocaine or methamphetamines. Officers also discovered and seized numerous firearms and ammunition in Taylor's bedroom.

Because officers had discovered "other evidence of another crime, methamphetamine," they sought "an addendum" to the original search warrant that "was written for a rifle because of a Reckless Endangerment." VRP (Mar. 10, 2014) at 129. At that point, officers "all backed out

2

of the residence" to wait "for the search warrant to include narcotics." VRP (Mar. 11, 2014) at 31. After receiving the additional search warrant, officers "did the search warrant on the house again, this time looking for the original stuff in the search warrant which was . . . firearms and then also narcotics." VRP (Mar. 11, 2014) at 31. Under Taylor's bed, officers discovered, among other things, a funnel, assorted glassware, coffee filters, containers of "bluish type of liquid," gallon containers of iodine, and acetone. VRP (Mar. 11, 2014) at 34. The also discovered five pseudoephedrine tablets in Taylor's bedroom.

The State charged Taylor with reckless endangerment[4] (count I), making a false or misleading statement to a public servant[5] (count II); possession of a controlled substance other than marijuana[6] (count III); use of drug paraphernalia[7] (count IV); possession of pseudoephedrine with intent to manufacture methamphetamine[8] (count V); and manufacturing methamphetamine on or between July 26, 2009 and March 14, 2012[9] (count VI).

Taylor moved to suppress his statements to officers. At a CrR 3.5 hearing, the trial court ruled that Taylor was advised of his *Miranda*[10] rights, Taylor's statements were made knowingly,

---

[4] RCW 9A.36.050(1).

[5] RCW 9A.76.175.

[6] RCW 69.50.4013(1).

[7] RCW 69.50.412(1).

[8] RCW 69.50.440(1).

[9] RCW 69.50.401(2)(b).

[10] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

freely, intelligently, and voluntarily without a request for counsel, and Taylor's statements were admissible. The State was instructed to submit written findings of fact and conclusions of law to the trial court for entry. The record does not show that the State complied with the trial court's direction. The trial court did not enter written findings of fact and conclusions of law.

On January 30, 2014, the State amended the information to add a firearm enhancement to counts V and VI. Taylor objected to the validity of the charges being joined and moved to sever the reckless endangerment charges from the drug related charges. Taylor argued that the officers' discovery of the drugs while executing the warrant for reckless endangerment was the only connection between the reckless endangerment charges and the drug related charges. Taylor also argued that the "drug paraphernalia and alleged equipment was found in the execution of the search warrant related to the Reckless Endangerment, but there's no proof that these are in anyway tied in an event or tied in time together." VRP (Jan. 30, 2014) at 3. The State did not dispute this point. Nevertheless, the State argued that the charges were properly joined because the "search warrant that was a result of the firearm allegation is directly what resulted in the discovery of drugs that lead to the drug charges, so they are connected together." VRP (Jan. 30, 2014) at 4. The trial court denied Taylor's motion to sever, finding, "I don't think there's substantial prejudice to the defendant. The jury can sort out if there's some differences in the proof and judicial efficiency requires that I keep it together." VRP (Jan. 30, 2014) at 5.

On February 7, Taylor renewed his motion to sever the drug related charges, again arguing that the facts leading to the reckless endangerment and false statements were not connected to the drug charges. Taylor also argued that there was "a high likelihood that [the jury] would attach some sort of level of dangerousness from the meth piece to the reckless endangerment piece."

4

VRP (Feb. 7, 2014) at 21.  The State argued that the charges were properly joined because "90 percent of the case is what was found in the house and this was done jointly . . . . [B]ecause the investigation is critical, that is what joins these and makes them part of the series of acts connected together."[11]  VRP (Feb. 7, 2014) at 23.  The State also argued that "we added a gun enhancement to counts V and VI, so that actually even makes it more connected up because now we have a piece of evidence that's actually shared between both series of charges."  VRP (Feb. 7, 2014) at 24.  The State further argued that severance was not necessary because the issues were relatively simple[12] and the trial would be short, so the jury could be reasonably expected to compartmentalize the evidence.  The trial court again denied Taylor's motion to sever the charges.

The case proceeded to trial.  Law enforcement officers testified to the above events.  They also testified that when they discovered the supplies, no chemical reaction was currently happening and it had been "an inactive lab" for "six months to a year possibly."  VRP (Mar. 11, 2014) at 55, 92.  The State also presented evidence that the items discovered in Taylor's room were used to manufacture methamphetamine.

The jury found Taylor guilty as charged.  Taylor appeals.

ANALYSIS

A.    JOINDER AND SEVERANCE

---

[11] The State argued that the charges are "properly joined under CR 42A (2)."  VRP (Feb. 7, 2014) at 22.  Civil Rule 42 is not applicable to this criminal proceeding; CrR 4.3 is the applicable joinder rule.

[12] The State argued this despite the State's and Taylor's previous reminders to the court that the case was complicated.

Taylor argues that the trial court erred in refusing to sever the charges of reckless endangerment and making a false statement from the drug related charges.[13] We agree.

We review a trial court's refusal to sever *"otherwise properly joined"* offenses for a manifest abuse of discretion. *State v. Harris*, 36 Wn. App. 746, 749, 677 P.2d 202 (1984); *State v. Wilson*, 71 Wn. App. 880, 884, 886, 863 P.2d 116 (1993), *rev'd in part on other grounds by* 125 Wn.2d 212, 883 P.2d 320 (1994). Washington cases have "blurred the distinction between joinder and severance so carefully drawn in federal law."[14] *Wilson*, 71 Wn. App. at 886. Consequently, the parties' arguments convolute the two concepts.

In order to address severance, we must "first address the joinder issue, keeping in mind that whether [the] counts were properly joined under CrR 4.3 is a question of law subject to full

---

[13] The State asserts that Taylor waived his challenge to the trial court's refusal to sever the charges because he did not "restate the objection at time for trial." Br. of Resp't at 8. CrR 4.4 provides: "If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion." Here, Taylor moved to sever on January 30, 2014, and renewed his motion on February 7, 2014. Thus, Taylor renewed his motion before the close of all evidence. We do not deem Taylor's challenge waived.

[14] "'The question of the propriety of joinder under [Federal] Rule 8 and of refusal to grant relief from prejudicial joinder under [Federal] Rule 14'"—that is, the refusal to sever

> are quite different in nature, although some decisions tend to obscure this. The former is a question of law, subject to full appellate review; if the joinder was not permitted by Rule 8, a conviction must be reversed unless the error was harmless. In contrast, the grant of relief under Rule 14 lies within the discretion of the trial judge and refusal to sever counts or defendants properly joined under Rule 8 will be reversed only if discretion was abused.

*Wilson*, 71 Wn. App. at 885 (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)); FED. R. CRIM. P. 8.

appellate review." *Id.* at 884. We review whether the charges were properly joined de novo. *Id.*; *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007).

Joinder is concerned with the propriety of joining offenses in the charging document. The joinder rule should "be construed expansively to promote the public policy of conserving judicial and prosecutorial resources." *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998), *review denied*, 137 Wn.2d 1017 (1999). We determine the validity of the joinder based solely on the allegations in the charging information. *Jawara*, 474 F.3d at 573. "If joinder was not proper but offenses were consolidated in one trial, the convictions must be reversed unless the error is harmless." *Bryant*, 89 Wn. App. at 864.

Washington's joinder rule, CrR 4.3(a)[15] provides:

Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

> (1) Are of the same or similar character, even if not part of a single scheme or plan; or

> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

---

[15] CrR 4.3(a) is analogous to Federal Rule of Criminal Procedure 8(a). *See Wilson*, 71 Wn. App. at 884; *Bryant*, 89 Wn. App. at 866; *accord State v. Weddel*, 29 Wn. App. 461, 467, 629 P.2d 912 (1981). Rule 8(a) provides:

> **Joinder of Offenses**. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Courts have long struggled with determining whether offenses are the "same or similar character" for purposes of joinder. *Jawara*, 474 F.3d at 575, 578. And "[n]umerous courts and commentators have questioned the logic and fairness of such a rule." *Id*. at 575. However,

> the bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment. Courts should not have to engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity. Thus, where the government seeks joinder of counts on the basis of "same or similar character," it crafts a barebones indictment at its own risk.

*Id.* at 578.

Offenses constitute a single scheme or plan justifying joinder when the joined counts are logically related or where the counts stem from related transactions. *Id.* at 574. This standard is satisfied in cases with a "concrete connection between the offenses that goes beyond mere thematic similarity." *Id.*

Here, the charging information does not demonstrate that the reckless endangerment and false statements charges were "of the same or similar character" or stem from the same conduct that constitute "parts of a single scheme or plan" as the drug related charges. FED. R. CRIM. P. 8(a); CrR 4.3(a)(2). Beyond Taylor's name and the allegation that the offenses occurred in March, the information contains no other details about the offenses from which to draw a connection or similarity. Rather, the only connection or similarity between the offenses is that the State charged Taylor with committing both offenses and discovered evidence of the drug related charges on Taylor's property in the course of investigating the reckless endangerment. Thus, because the information contains no allegation or other information demonstrating that the drug related charges were of the same or similar character, or the same conduct that is part of a single scheme or plan

8

as the charges of reckless endangerment and making a false statement, the offenses were improperly joined.

The State argued to the trial court that the charges were properly joined because the "search warrant that was a result of the firearm allegation is directly what resulted in the discovery of drugs that lead to the drug charges, so they are connected together." VRP (Jan. 30, 2014) at 4. The State also argued that "the investigation is critical, that is what joins these and makes them part of the series of acts connected together." VRP (Feb. 7, 2014) at 23. However, the standard for whether offenses are properly joined is not whether the State discovered the separate evidence for the separate offenses at the same time. The standard for whether offenses are properly joined is whether the offenses are either (1) of the same or similar character, regardless of whether they were part of a common plan, or (2) the same or similar conduct that is part of a common plan. CrR 4.3(a); *see* FED. R. CRIM. P. 8. The State did not allege or argue that, beyond the officer's accidental discovery of the drug evidence, that the offenses meet the standard set out in CrR 4.3(a).[16] And because there is no indication that the drug related offenses were of the same or similar character, or based on the same conduct that constitute a single scheme or plan as the reckless endangerment and making a false statement charges, the offenses were improperly joined.

---

[16] Before the trial court and on appeal, the State asserts that the charges "represent the Res Gestae of the investigation." Br. of Resp't at 8. Res gestae is a doctrine concerning the admissibility of evidence at trial. *See State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012), *cert. denied*, 135 S. Ct. 153 (2014). The State has offered no argument or authority to support its contention that res gestae prevents the trial court from severing improperly joined offenses. And "[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Improperly joined offenses that are consolidated in one trial require reversal unless the error was harmless. *Bryant*, 89 Wn. App. at 864; *see Jawara*, 474 F.3d at 580. Here, we cannot conclude that the error was harmless. Officers testified that the firearms were seized pursuant to the original warrant related to reckless endangerment. In arguing against severance, the State argued that the offenses were properly joined because it added a firearm enhancement to counts V and VI based on the firearms discovered related to counts I and II. VRP (Feb. 7, 2014) at 24 ("[W]e added a gun enhancement to counts five and six, so that actually even makes it more connected up because now we have a piece of evidence that's actually shared between both series of charges.") Joinder allowed the jury to consider the evidence of the weapons related to count I, the reckless endangerment charge, in determining whether Taylor was armed during commission of counts V and VI, the drug related charges. Similarly, the joinder allowed the jury to consider the drug evidence in determining the reckless endangerment charge. In other words, the jury was improperly permitted to cumulate evidence to find Taylor's guilt or infer criminal disposition. *See State v. Russell*, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994). Accordingly, erroneously allowing improperly joined offenses to be consolidated in one trial was not harmless. Because the trial court erred by allowing the improperly joined offenses to go to trial together, we reverse.

B.     SUFFICIENCY OF THE EVIDENCE

Taylor argues that the State presented insufficient evidence that he possessed pseudoephedrine with intent to manufacture methamphetamine (count V). We disagree.

We review sufficiency of the evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201,

829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *Id.* We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

To establish that Taylor possessed pseudoephedrine with intent to manufacture methamphetamine, the State had to prove that he (1) possessed pseudoephedrine and (2) intended to use the pseudoephedrine to manufacture methamphetamine. RCW 69.50.440; *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132 (2005), *review denied,* 157 Wn.2d 1019 (2006). Only the second element is at issue here. "Manufacture" means "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly." Former RCW 69.50.101(p) (LAWS OF 2010, ch. 177, § 1); *State v. Davis*, 117 Wn. App. 702, 708, 72 P.3d 1134 (2003), *review denied*, 151 Wn.2d 1007 (2004). A person acts with intent when he acts with the objective or purpose to accomplish a result that constitutes a crime. RCW 9A.08.010(1)(a).

Washington courts have consistently held that mere possession of pseudoephedrine is not enough to support a conviction for intent to manufacture; at least one additional factor suggestive of the required intent must be present. *Moles*, 130 Wn. App. at 466. Evidence that the defendant possessed an additional component of the manufacturing process is sufficient to establish an intent to manufacture methamphetamine. *See State v. Missieur*, 140 Wn. App. 181, 187-88, 165 P.3d 381 (2007) (finding sufficient evidence of intent where the defendant possessed pseudoephedrine and lithium batteries, both components of the manufacturing process); *Moles*, 130 Wn. App. at

466 (finding sufficient evidence where the defendant possessed pseudoephedrine pills in addition to a coffee filter with methamphetamine residue).

Here, sufficient evidence supports the jury's finding of possession with intent to manufacture. In addition to evidence that Taylor possessed pseudoephedrine, the State presented evidence that officers recovered substantial quantities of iodine and a funnel with traces of red phosphorus on Taylor's property. The State also presented evidence that both iodine and red phosphorus are used in the manufacture of methamphetamine. This evidence of additional components of the methamphetamine manufacturing process is sufficient to support the element of intent. Accordingly, the State presented sufficient evidence and Taylor's argument fails.

C.    CrR 3.5

Taylor contends, and the State concedes, that the trial court failed to enter written findings of fact and conclusions of law pursuant to CrR 3.5. Taylor does not otherwise challenge the admissibility of his statements or the validity of the trial court's oral ruling. While the trial court did fail to enter written findings of fact and conclusions of law, we hold that this error was harmless.

Under CrR 3.5, the trial court must conduct an admissibility hearing before admitting a defendant's statement into evidence. CrR 3.5(c) requires the trial court to enter written findings of fact and conclusions of law after a CrR 3.5 hearing. Failure to enter written findings and conclusions after a CrR 3.5 hearing is error. *State v. Elkins*, 188 Wn. App. 386, 396, 353 P.3d 648, *review denied*, 184 Wn.2d 1025 (2015). However, the failure to enter written findings and conclusions following a CrR 3.5 hearing is harmless error if the trial court's oral findings are sufficient to enable appellate review. *Id.*

In its oral ruling admitting Taylor's statements, the trial court expressly found that (1) Taylor was advised of his *Miranda* rights, (2) the officer's testimony was credible, and (3) Taylor's statements were made knowingly, intelligently, freely and voluntarily given without a request for counsel. These oral findings are sufficient to enable appellate review. Therefore, because the trial court's oral findings are sufficient to enable appellate review, the trial court's failure to enter written findings of fact and conclusions of law was harmless.[17]

D.      SAG

Taylor asserts, "The Judge that heard my case was at one time a lawyer me and my wife had used." SAG at 1. It is unclear what the alleged error is, as required by RAP 10.10. However, to the extent Taylor suggests that the trial court was prejudiced against him or had a conflict of interest, that issue was never raised below and we will not address it for the first time on appeal. RAP 2.5; *Cowiche Canyon v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

In conclusion, we hold that sufficient evidence supports the jury's finding of possession with intent to manufacture and the trial court's failure to enter written findings and conclusions after the CrR 3.5 hearing was harmless error. We also hold that the trial court abused its discretion by denying Taylor's motions to sever the reckless endangerment charges from the drug related charges because the counts were improperly joined. Therefore, we reverse and remand for proceedings consistent with this opinion.

---

[17] Because Taylor did not assign error to the trial court's admission of his statements, we do not address whether the trial court erred by admitting his statements.

No. 46030-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.