

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73047-9-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| CHARLES LINNELL BLUFORD, | ) | PUBLISHED |
| Appellant. | ) | FILED: <u>August 29, 2016</u> |

Cox, J. — Charles Bluford appeals his judgment and sentence, based on eight felony convictions for robbery and other charges. We hold that the trial court did not abuse its discretion when it joined multiple counts against him and refused to sever those counts for trial. But the court erred when it denied his request to instruct the jury on the lesser included offense of fourth-degree assault. Additionally, the State failed to prove that Bluford is a persistent offender under the Persistent Offender Accountability Act (POAA). Thus, the sentence of life without the possibility of release cannot stand. We affirm, in part, reverse, in part, and remand for resentencing.

The State charged Charles Bluford with nine felony counts. These included seven counts of first-degree robbery plus a charge of first-degree rape of one victim and indecent liberties of a separate victim.

The State initially charged Bluford under three different cause numbers, but moved to join all the counts for trial. Bluford moved to sever five of the counts from the others. The court considered these cross motions at the same hearing and joined all counts for trial.

At trial, Bluford requested a lesser included instruction of fourth-degree assault for the charge of indecent liberties. The court denied his request.

The jury found Bluford guilty of eight counts and acquitted him of one count of robbery. The trial court determined that Bluford's prior felony convictions in New Jersey and South Carolina qualified him under the POAA as a persistent offender. It sentenced him to life without the possibility of release.

Bluford appeals.

## JOINDER

Bluford argues that the trial court abused its discretion by joining for trial the nine counts against him. Specifically, he argues that the joinder prejudiced him. We hold that the court did not abuse its discretion in joining all counts for trial.

Under RCW 10.37.060,

> When there are several charges against any person, or persons, for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts; and, if two or more indictments are found, or two or more informations filed, in such cases, the court may order such indictments or informations to be consolidated.

2

Similarly, under CrR 4.3(a),

> Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
>
> > (1) Are of the same or similar character, even if not part of a single scheme or plan; or
> >
> > (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Courts may not join offenses if it would prejudice the defendant.[1] It is the defendant's burden to establish prejudice.[2]

As a threshold matter, the State argues that we should abandon and disavow the reasoning of this court's decision in State v. Bryant.[3] We decline to do so.

There, this court considered whether joinder of bail jumping and second-degree robbery counts was proper.[4] The trial court denied Bryant's motion to sever the two counts that the State had alleged in an amended information.[5] Because Bryant failed to renew his motion to sever during trial, this court held that he failed to preserve the issue for review.[6]

---

[1] State v. Bryant, 89 Wn. App. 857, 865, 950 P.2d 1004 (1998).

[2] State v. Bythrow, 114 Wn.2d 713, 720, 790 P.2d 154 (1990).

[3] 89 Wn. App. 857, 950 P.2d 1004 (1998).

[4] Id. at 862.

[5] Id. at 864.

[6] Id.

Nevertheless, this court considered both joinder and severance. This court did so because both rules "are based on the same underlying principle, that the defendant receive a fair trial untainted by undue prejudice."[7] In reaching this conclusion, this court acknowledged that the federal courts maintain a distinction between the two.[8]

We see no compelling reason in this case to depart from the approach we took in Bryant. Here, Bluford also failed to renew his severance motion following the pretrial denial of that motion. Thus, he technically failed to preserve for review the issue of severance.

Nevertheless, we note that the trial court considered and decided the cross motions for joinder and severance at the same hearing. The State offers no practical assistance on how or why we should separate the two issues for purposes of our review of the trial court's decision at that hearing to grant joinder and deny severance.

We also note that the state supreme court has repeatedly stated that joinder should not prejudice a defendant.[9] A Division Two opinion on which the State relies here states that the supreme court "has blurred the distinction between joinder and severance so carefully drawn in federal law by referring to it

---

[7] Id. at 865.

[8] Id.

[9] State v. Russell, 125 Wn.2d 24, 62, 882 P.2d 747 (1994); State v. Long, 65 Wn.2d 303, 319, 396 P.2d 990 (1964).

as a broad rule."[10] We will leave to the supreme court to decide whether it wishes to follow the federal approach or continue a more flexible approach to this question, as indicated in the jurisprudence.

Accordingly, under Bryant, we first determine whether joinder in this case meets the criteria of the rule and statute. We then consider whether actual prejudice precludes joinder.

Joinder of the counts was proper under CrR 4.3 and RCW 10.37.060. The charges against Bluford were based on a series of acts connected together. And Bluford does not dispute that joinder was proper under the rule and statute.

Accordingly, the next question is whether Bluford can establish that the joinder prejudiced him.

We expansively construe the joinder rule to promote the public policy goal of conserving judicial resources.[11] Joinder is appropriate unless it is so "manifestly prejudicial" that it outweighs the need for judicial economy.[12]

Four factors guide the determination whether prejudice results from joinder: "(1) the strength of the State's evidence on each of the counts; (2) the clarity of the defenses on each count; (3) the propriety of the trial court's

---

[10] State v. Wilson, 71 Wn. App. 880, 886, 863 P.2d 116 (1993), rev'd in part, 125 Wn.2d 212, 883 P.2d 320 (1994).

[11] Bryant, 89 Wn. App. at 864.

[12] Bythrow, 114 Wn.2d at 718.

instruction to the jury regarding the consideration of evidence of each count separately; and (4) the admissibility of the evidence of the other crime[s]."[13]

*Strength of the Evidence*

Here, the trial court determined that the strength of the State's evidence for each count was equivalently strong. Bluford disagrees, pointing out that two of the victims identified Bluford while the others did not. But while these two were the only victims to identify Bluford, they were also the only victims whose property was not found in the possession of Bluford's associate. Thus, while the evidence for each count was different, the court did not abuse its discretion by determining that the evidence was equivalently strong.

*Clarity of Defenses to Each Count*

Bluford asserted a general denial for each count—he argued that someone else committed the crimes. Thus, he could not have been prejudiced by inconsistent defenses—his defenses were all the same.

*Instruction to Consider Evidence of Each Count Separately*

The court determined that the jury could be instructed to consider the evidence for each count separately. Bluford argues that the court's instructions to the jury at the end of the case did not instruct the jury that it could not consider the evidence of other crimes as propensity evidence. But Bluford failed to request such an instruction. And the trial court is not required to give such an instruction if the defendant fails to request one.[14]

---

[13] State v. Cotten, 75 Wn. App. 669, 687, 879 P.2d 971 (1994).

[14] State v. Russell, 171 Wn.2d 118, 122-23, 249 P.3d 604 (2011); ER 105.

At the time of the court's pretrial ruling, the court properly identified that such a limiting instruction could be given. Additionally, assuming that the lack of such an instruction weighs towards severance, this is only one factor to consider.

*Cross Admissibility of Evidence*

The court determined that the evidence of each count would be cross admissible for the other counts. We hold that the court properly did so for the purpose of showing modus operandi.

ER 404(b) prohibits introducing evidence of other bad acts as propensity evidence. But such evidence is admissible for other purposes, such as proof of motive, plan, or identity.[15]

We review for abuse of discretion decisions to admit evidence under ER 404(b).[16]

Under the modus operandi exception, evidence of other bad acts is admissible to show identity "if the method employed in the commission of [the] crimes is so unique that proof that an accused committed one of the crimes creates a high probability that he also committed the other crimes with which he is charged."[17] "The modus operandi 'must be so unusual and distinctive as to be like a signature.'"[18]

---

[15] State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007).

[16] State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

[17] Foxhoven, 161 Wn.2d at 176 (internal quotation marks omitted) (quoting Thang, 145 Wn.2d at 643).

[18] Id. (internal quotation marks omitted) (quoting State v. Coe, 101 Wn.2d 772, 777, 684 P.2d 668 (1984)).

Modus operandi requires unique features.[19] But features that are not individually unique can be sufficiently unique in combination.[20] "The question for the court to answer is whether all of these shared features, when combined, are so unusual and distinctive as to be signature-like."[21]

For example, in State v. Jenkins, two men broke into several apartment complexes in the same area.[22] In each instance, one acted as a lookout while the other entered a ground floor apartment.[23] Additionally, each break-in occurred during the morning, a pipe wrench was used to break into each apartment, and a brown Camero vehicle was used to leave.[24] This combination was unique enough to affirm the trial court's ruling that the evidence of the other break-ins was admissible as modus operandi evidence.[25]

Similarly, in State v. Laureano, the supreme court upheld admission of evidence as a modus operandi after the trial court determined that there were several similarities between two robberies, including:

> (1) that they occurred only approximately three weeks apart; (2) that they both involved the forcible entry of family residences; (3) that both crimes occurred after dark; (4) that both crimes involved three perpetrators, although not the same three in each instance;

---

[19] Id.

[20] Thang, 145 Wn.2d at 644.

[21] Id. at 645.

[22] 53 Wn. App. 228, 237, 766 P.2d 499 (1989).

[23] Id.

[24] Id. at 229-30, 237.

[25] Id. at 237.

(5) that both crimes involved the presence of firearms by each of the persons entering the residence; (6) that in both cases one of the perpetrators was armed with a [20 gauge, 6 shot] shotgun, and said shotgun was used in a similar manner in each crime; (7) that both crimes involved perpetrators dressed in Army fatigues; and that the above list of similarities is illustrative in nature but is not exhaustive[.][26]

In Bluford's case, the trial court determined that the crimes were cross admissible for the following reasons:

Each incident occurred within an approximately two month period. Each incident occurred during hours of darkness. Each incident occurred in the Seattle metro area. Each incident occurred in a residential area. The defendant was a stranger to each victim. In each incident, the victims were alone when an African American male approached with a handgun and gave verbal demands to the victims. The descriptions of the handgun by the victims are similar. Four of the victims gave a description of the vehicle, which matches the vehicle the defendant was later found inside. Two of the three female victims were sexually assaulted during the course of the robberies. Although one of the female victims was not sexually assaulted during the robbery, she ran away at the time of the robbery, thereby limiting the opportunity [for the defendant] to sexually assault her . . . . Therefore, although none of the incidents are a carbon copy of the others, the incidents are strikingly similar.[27]

Additionally, in each case the perpetrator approached the victim as he or she exited a car. And when the victim did not cooperate, the perpetrator forcefully took his or her property or assaulted the victim.

The trial court did not abuse its discretion when it determined that these similarities were sufficient to admit the evidence of other crimes as modus

---

[26] 101 Wn.2d 745, 765, 682 P.2d 889 (1984) (second alteration in original).

[27] Clerk's Papers at 17.

operandi evidence. The trial court based its decision on appropriate considerations. "[G]eographical proximity and commission of the crimes within a short time frame" are appropriate factors to consider.[28]

This case resembles Jenkins and Laureano. As in Laureano, all crimes occurred after dark and involved multiple perpetrators and firearms.[29] Additionally, evidence suggested that one perpetrator was armed with the same gun in all crimes, and that gun was used in a similar manner in each crime. And as in Jenkins, there was evidence that the perpetrators used the same car in multiple crimes.[30]

This case does have more dissimilarities than Jenkins or Laureano. Many features were present in some, but not all, crimes. But "the existence of some dissimilarities in the crimes is not dispositive."[31] One or two characteristics may be missing from a given crime if the remaining similarities still suggest a signature.[32] And a higher number of crimes compensates for some dissimilarities.[33]

---

[28] Thang, 145 Wn.2d at 643.

[29] 101 Wn.2d at 765.

[30] 53 Wn. App. at 237.

[31] In re Det. of Coe, 175 Wn.2d 482, 498-99, 286 P.3d 29 (2012).

[32] Id.

[33] Id. at 500.

The trial court did not abuse its discretion when it determined that the evidence of other crimes was cross admissible as modus operandi evidence.

Bluford relies on State v. Thang[34] to argue that his crimes are not similar enough to qualify as modus operandi evidence. But in that case the trial court determined that the crimes were not distinctive enough.[35] Thus, that case is not helpful here, where the trial court used its discretion to determine that the other crimes were admissible as modus operandi evidence.

Bluford also argues that the similarities that the trial court identified are common in robberies. But the individual features do not have to be unique as long as they are sufficiently unique in combination.[36]

Bluford also identifies several dissimilarities among the crimes. But as stated earlier, this is not dispositive, and not every feature needs to be present in every crime.

Accordingly, the court did not abuse its discretion when it determined that the evidence was cross admissible to establish a modus operandi. And, weighing the four relevant factors, the court did not abuse its discretion when it determined that joinder would not prejudice Bluford.

---

[34] 145 Wn.2d 630, 41 P.3d 1159 (2002).

[35] Id. at 645.

[36] Id. at 644.

## LESSER INCLUDED OFFENSE

Bluford argues that the court erred by denying his request for a lesser included offense instruction. We agree.

Instructing juries on lesser included offenses "is crucial to the integrity of our criminal justice system."[37] Consequently, courts "err on the side of instructing juries on lesser included offenses."[38] Courts should instruct the jury about a lesser included offense if the jury could find that the defendant committed only the lesser included offense.[39]

We analyze whether a defendant is entitled to a lesser included offense instruction under the test announced in State v. Workman.[40] Under this test, the defendant is entitled to an instruction when "(1) each of the elements of the lesser offense is a necessary element of the charged offense and (2) the evidence in the case supports an inference that the lesser crime was committed."[41]

Here, there is no dispute that the factual prong is satisfied. The question is whether the legal prong of the Workman test is met. We review de novo whether the legal prong is met.[42]

---

[37] State v. Henderson, 182 Wn.2d 734, 736, 344 P.3d 1207 (2015).

[38] Id.

[39] Id.

[40] 90 Wn.2d 443, 584 P.2d 382 (1978).

[41] Henderson, 182 Wn.2d at 742.

[42] State v. Condon, 182 Wn.2d 307, 316, 343 P.3d 357 (2015).

The State charged Bluford with one count of indecent liberties. This was in connection with the robbery of R.J.

Indecent liberties requires that a person "**knowingly** cause[] another person [who is not his or her spouse] to have sexual contact with him or her or another . . . [b]y forcible compulsion."[43] Accordingly, this crime requires knowledge as the mental state.

Bluford argued that he was entitled to a lesser included offense instruction on fourth-degree assault. Fourth-degree assault is an assault not amounting to first, second, or third-degree assault.[44] Because the statute does not define the term "assault," Washington uses the common law definition.[45] "For purposes of this case, the definition of assault that applies is an unlawful touching with criminal intent."[46] Thus, fourth-degree assault requires intent as the mental state.

Here, the trial court ruled that assault is not a lesser included offense because it requires a higher mental state than indecent liberties. The court relied on State v. Thomas,[47] an opinion from Division Three. Although Thomas so holds, a subsequent supreme court case shows that Thomas was wrongly decided.[48]

---

[43] RCW 9A.44.100(1)(a) (emphasis added).

[44] RCW 9A.36.041(1).

[45] State v. Stevens, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).

[46] Id. at 311.

[47] 98 Wn. App. 422, 989 P.2d 612 (1999).

[48] Stevens, 158 Wn.2d at 310-12.

In State v. Stevens, the supreme court decided whether fourth-degree assault was a lesser included offense of child molestation.[49] Child molestation does not explicitly include an intent requirement.[50] But "sexual contact" between the defendant and the victim is one element.[51]

The legislature has defined "[s]exual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire."[52] Thus, the State must prove that the defendant acted with a sexual purpose.[53] The Stevens court held that this purpose requirement meant that fourth-degree assault did not require a higher mental state and was a lesser included offense of child molestation.[54]

The same reasoning applies here. Indecent liberties also requires "sexual contact."[55] And the same definition of "sexual contact" applies to both indecent liberties and child molestation.[56] Thus, the State must prove that the defendant

---

[49] 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).

[50] RCW 9A.44.086.

[51] Id.

[52] RCW 9A.44.010(2).

[53] Stevens, 158 Wn.2d at 312.

[54] Id. at 311.

[55] RCW 9A.44.100(1).

[56] RCW 9A.44.010.

14

acted with a sexual purpose. Accordingly, fourth-degree assault does not require a higher mental state than indecent liberties.

Thus, the Workman test's legal prong is met here. Consequently, Bluford was entitled to a lesser included offense instruction on fourth-degree assault.

Failure to instruct the jury on a lesser included offense when warranted requires reversal.[57] Thus, we must reverse Bluford's conviction for indecent liberties.

The State does not address the merits of this argument. Instead, it argues that Bluford may not raise this issue under either the invited error doctrine or RAP 2.5(a). Neither reason applies, and we reject the State's procedural arguments.

Bluford submitted lesser included offense instructions to the trial court. In a colloquy with the court, Bluford acknowledged Thomas's holding on the claimed difference in mental state. But Bluford maintained that a lesser included offense instruction was still appropriate. This was sufficient to preserve the issue for our review.

Despite the State's argument to the contrary, Bluford did not invite the trial court's error. For the invited error doctrine to apply, "[t]he defendant must materially contribute to the error challenged on appeal by engaging in some type

---

[57] Condon, 182 Wn.2d at 326.

of affirmative action through which he knowingly and voluntarily sets up the error."[58] The State has the burden to prove invited error.[59]

Here, Bluford maintained that a lesser included offense instruction was appropriate. Thus, he did not "knowingly and voluntarily" set up any error.

RAP 2.5(a) also does not prevent Bluford from arguing this issue on appeal. Under this rule, this court generally does not review issues first raised on appeal. Because Bluford preserved the issue for review, RAP 2.5(a) does not apply.

## POAA

Bluford argues that the State failed to prove that he is a persistent offender. Because we agree, we reverse the sentence of life without the possibility of release and remand for resentencing.

At sentencing, the trial court determined that Bluford's prior convictions in South Carolina and New Jersey were comparable to robbery in Washington, a "most serious offense" under the POAA. The court sentenced him to "confinement for life without the possibility of release" as a "persistent offender."

We review de novo whether an out-of-state conviction is comparable to a Washington crime.[60] To determine comparability, "we first consider if the elements of the foreign offense are substantially similar to the Washington

---

[58] State v. Mercado, 181 Wn. App. 624, 630, 326 P.3d 154 (2014).

[59] Id.

[60] State v. Sublett, 176 Wn.2d 58, 87, 292 P.3d 715 (2012).

counterpart. If so, the inquiry ends."[61] In this analysis, we look at the statutes in effect at the time the out-of-state crime was committed.[62]

If the elements are not substantially similar,

> the sentencing court can, in some cases, look at portions of the record of the prior proceeding to see if the conduct of which the defendant was convicted was identical to what is required for a comparable Washington conviction; *but the portion of the foreign record that the Washington court can consider is very limited.* The sentencing court can look at the charging instrument from the foreign proceeding, but it cannot consider "facts and allegations contained in [the] record of prior proceedings, if not directly related to the elements." This limitation is compelled by not just statutory interpretation but also constitutional concerns. . . . Any attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction, proves problematic.[63]

Under RCW 9.94A.030(38), a persistent offender:

> is an offender who: (a)(i) Has been *convicted in this state* of any felony considered *a most serious offense*; and (ii) *Has*, before the commission of the offense under (a) of this subsection, *been convicted as an offender on at least two separate occasions,* whether in this state or *elsewhere, of felonies that under the laws of this state would be considered most serious offenses* . . . provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.[64]

---

[61] Id.

[62] In re Pers. Restraint of Lavery, 154 Wn.2d 249, 255, 111 P.3d 837 (2005).

[63] State v. Jones, 183 Wn.2d 327, 345-46, 352 P.3d 776 (2015) (emphasis added) (alteration in original) (citations omitted) (quoting State v. Ford, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999)).

[64] (Emphasis added.)

17

Here, Bluford was convicted in this state of robbery, a most serious offense for purposes of this statute.[65] The question is whether the State proved that his South Carolina and New Jersey felony convictions fulfill the statutory requirements for at least two prior most serious offenses.

*New Jersey*

Bluford pleaded guilty to second-degree robbery in New Jersey. He argues that the State failed to prove that this offense is comparable to Washington's robbery statute. We agree.

New Jersey's robbery statute is not legally comparable to Washington's robbery statute. In Washington:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.[66]

In contrast, in New Jersey:

> A person is guilty of robbery if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another; or (2) Threatens another with or purposely puts him in fear of immediate bodily injury; *or (3) Commits or threatens immediately to commit any crime of the first or second degree.*[67]

---

[65] RCW 9.94A.030(33).

[66] Former RCW 9A.56.190 (1975).

[67] N.J. Stat. § 2C:15-1 (emphasis added).

18

This statute's third prong does not require the use of force or threatened force. Thus, New Jersey's robbery statute is broader than Washington's.

The New Jersey judgment and sentence for Bluford does not specify under which prong he pleaded guilty. It merely lists the entire statute, N.J. Stat. § 2C:15-1, as the basis for the conviction. So, there is the possibility that he pleaded guilty to the third prong of the statute.

Likewise, the State did not produce the information for the charge to which Bluford pleaded guilty. So, there is no basis to exclude the possibility that he could have pleaded guilty to the third prong of the statute.

The next question is whether the crimes are factually comparable. There is insufficient proof of this requirement.

There is no evidence in this record of any facts that Bluford either admitted or stipulated to, or that were proven beyond a reasonable doubt. Accordingly, there is no basis in this record to make a factual comparison.

The State argues that it proved Bluford's conviction was legally comparable to a Washington robbery conviction. It relies on two matters in the record for this argument.

First, it argues that Bluford was initially charged with first-degree robbery under the second prong of the statute. New Jersey initially indicted Bluford for first-degree robbery for "threaten[ing] immediate bodily injury . . . [or] use of a deadly weapon." Threatening bodily injury corresponds with the second prong of

the statute, while threatening use of a deadly weapon corresponds with the elevation of the crime to the first degree.[68]

The State argues that the lack of an amended information for second-degree robbery permits this court to infer that Bluford was charged with and pleaded guilty to second-degree robbery under the same prong he was charged with for first-degree robbery. It argues, "If Bluford had pled guilty under a different prong than the one set out in the original charging document, presumably an amended charging document would have been necessary. . . ."

We are not persuaded by this untenable presumption. The State cites no authority for this argument. For that reason alone, we could reject it.

In any event, we decline to speculate on whether an amended information was required in New Jersey. The fact is that none is in the record before us. That is a failure of proof of a vital piece of information to determine whether Bluford is a persistent offender for sentencing purposes.

The State also argues that the judgment's description of facts establishes that Bluford pleaded guilty to the second prong. This argument falls short of the required proof.

The State concedes that this description of facts cannot be used for a factual comparability analysis. They are neither admitted to nor proven beyond a reasonable doubt. Why they should be used in this circumstance is not convincingly explained.

---

[68] Id.

The State argues that it "is aware of no authority holding that [this description of facts] may not be considered as circumstantial evidence of the prong under which the New Jersey court accepted Bluford's guilty plea." We are unaware of any authority that would permit this court or any court to use such facts when making a comparability determination.

*South Carolina*

We next consider the South Carolina convictions to determine whether the State has met its burden of proof in this case.

On August 12, 1998, Bluford pleaded guilty to two counts of armed robbery in South Carolina. To the extent these two felonies should be considered most serious offenses in Washington, either of them may be considered, but not both. That is because the plain words of RCW 9.94A.030(38)(ii) require prior qualifying convictions to occur "on at least two separate occasions." These South Carolina convictions were both on the same day, August 12, 1998, the date he pleaded guilty to the two counts of armed robbery. Thus, they were not convictions on two separate occasions. Accordingly, only one of Bluford's two South Carolina convictions may be considered as a most serious offense in this analysis.

Because only one of the two South Carolina convictions may be considered, and the State has failed in its burden to show that the New Jersey conviction is comparable, we need not address further the comparability of either South Carolina conviction. That is because doing so would be insufficient to

21

show that Bluford had two prior qualifying convictions. Accordingly, we do not further address the comparability of either South Carolina conviction.

In sum, on this record, there is a failure of proof to show that Bluford is a persistent offender. The sentence of life without the possibility of release is not warranted. We must reverse the sentence and remand for resentencing.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Bluford's Statement of Additional Grounds for Review does not raise any meritorious claims.

In his first argument, he appears to argue that one of the victims for two of the charged crimes was allegedly unable to identify him in a photo montage. But, given the evidence at trial, this apparent challenge to the sufficiency of the evidence is untenable.

Bluford's second argument is that police officers violated the Fourth Amendment and article I, section 7 of the state constitution when they searched his home. But he concedes that the police had a valid warrant. Accordingly, this argument is also untenable.

For these reasons, we reject his request for relief based on these additional arguments.

No. 73047-9-I/23

We affirm Bluford's convictions for rape and six counts of first-degree robbery. We reverse Bluford's conviction for indecent liberties. We vacate Bluford's sentence of life without the possibility of release and remand for resentencing.

Cox, J.

WE CONCUR:

Dwyer, J.                                    Becker, J.

23