

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 4 2017

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 4, 2017

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 93668-4 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| CHARLES LINNELL BLUFORD, | ) | |
| | ) | |
| Petitioner. | ) | Filed: MAY 0 4 2017 |
| | ) | |

YU, J.—This case provides us an opportunity to clarify what a trial court must consider when the State moves to join multiple criminal charges against a defendant into a single charging document pursuant to CrR 4.3(a). We now reaffirm our precedent, which holds that the trial court must consider whether such joinder will result in undue prejudice to the defendant. If it will, joinder is not permissible. We therefore overrule certain Court of Appeals opinions that have departed from this approach, reverse petitioner Charles Linnell Bluford's convictions, and remand to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Bluford with one count of first degree robbery and one count of indecent liberties. The basis for the indecent liberties charge was that after threatening the victim with a gun and forcibly taking her purse, Bluford "searched [the victim's] body, including putting his hand inside her underwear, for money." Clerk's Papers (CP) at 4.

The State later charged Bluford in a separate information with five more first degree robberies involving five new victims. In a third information, the State charged Bluford with first degree rape and first degree robbery involving yet another victim. The similarities and differences between the charged offenses are discussed in more detail below as relevant to the analysis.

Before trial, the State moved to join the two robberies accompanied by sexual offenses to the other five robberies, while Bluford moved to sever the five robberies from each other. The court heard both motions at the same time at the omnibus hearing.[1] The court granted the State's motion to join and denied Bluford's motion to sever. Bluford did not renew his motion to sever.

---

[1] Based on the timing of the various charges, Bluford's written motion to sever addressed only the five robberies that were not accompanied by sexual offenses. CP at 369-70. The State's written motion requested that the two robberies accompanied by sexual offenses be joined with the other five and also requested that Bluford's severance motion be denied. *Id.* at 379. At oral argument, the parties and the trial court approached Bluford's motion as seeking severance of all charges and the State's motion as seeking joinder of all charges. Verbatim Report of Proceedings (June 23, 2014) at 3-4, 31-32. We do not need to opine on the impact of that

2

Bluford was convicted of eight of the nine counts, including both sexual offenses. He was acquitted of one count of robbery. The court sentenced Bluford as a persistent offender pursuant to RCW 9.94A.570, finding that three of Bluford's prior out-of-state convictions (one conviction for second degree robbery in New Jersey and two convictions for armed robbery in South Carolina) "are both legally and factually comparable to most serious offenses in Washington." *Id.* at 196. Bluford was therefore sentenced to eight concurrent life sentences without the possibility of parole.

In a published opinion, the Court of Appeals held that (1) the trial court properly allowed joinder, (2) Bluford did not invite the trial court to erroneously deny his request for a lesser-included offense instruction on the indecent liberties charge, and (3) the State had not proved Bluford's prior New Jersey conviction for second degree robbery was factually or legally comparable to a most serious offense in Washington, so Bluford's persistent offender sentence was erroneously imposed. *State v. Bluford,* 195 Wn. App. 570, 583, 586, 591, 379 P.3d 163 (2016).[2] The Court of Appeals thus affirmed Bluford's robbery and rape

---

approach, if any, because we reverse all of Bluford's convictions and remand for further proceedings consistent with this opinion.

[2] The Court of Appeals determined that only one of Bluford's two prior South Carolina robbery convictions could be considered because they were both entered on the same day and therefore not "'on at least two separate occasions.'" *Bluford,* 195 Wn. App. at 591 (quoting RCW 9.94A.030(38)(a)(ii)). Therefore, without the New Jersey conviction, Bluford had only one prior out-of-state conviction for a most serious offense, not the two required for persistent offender sentencing. *Id.* The State does not challenge this conclusion.

convictions, reversed his indecent liberties conviction, vacated his sentence, and remanded for resentencing. *Id.* at 592.

Bluford petitioned for review on the joinder issue. The State cross petitioned for review on the issues of the lesser-included offense instruction and the persistent offender sentence. We granted review of all issues. Order Granting Review, *State v. Bluford*, No. 93668-4 (Wash. Jan. 4, 2017). The State subsequently withdrew its request for review of the lesser-included offense issue. Wash. Supreme Court oral argument, *State v. Bluford*, No. 93668-4 (Mar. 21, 2017), at 13 min., 51 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

## ISSUES

A.     Was it reversible error to join all nine of the charged counts?

B.     Did the State produce sufficient evidence of the comparability of Bluford's out-of-state convictions to support a persistent offender sentence?

## ANALYSIS

A.     Joinder

The parties differ sharply on the scope and standard of our review on the joinder issue. We reaffirm our precedent and clarify that (1) both prejudice to the defendant and judicial economy are relevant factors in joinder decisions, but

judicial economy can never outweigh a defendant's right to a fair trial, and (2) a trial court's decision on a pretrial motion for joinder is reviewed for abuse of discretion.

While the Court of Appeals applied the correct analytical approach to the joinder issue in this case, we reverse on the merits. The evidence for all nine charges was not cross admissible, and the benefits of joinder were outweighed by the clear likelihood of undue prejudice to Bluford. We therefore reverse Bluford's remaining convictions and remand for further proceedings.

1.     Overview of joinder and severance

While joinder and severance are often considered together, the parties' arguments in this case indicate that there is a need to review the distinctions between them and to clarify how they interact with each other at the trial and appellate levels. We now take the opportunity to do so.

"Joinder" refers to bringing multiple criminal charges against one person as separate counts in a single charging document. CrR 4.3(a). If multiple charges were originally brought against a defendant in separate charging documents, the court "may" join offenses on a party's motion.[3] *Id.* Offenses are eligible for joinder only when they "[a]re of the same or similar character, even if not part of a

---

[3] This opinion considers only permissive joinder pursuant to CrR 4.3(a), not mandatory joinder pursuant to CrR 4.3.1(b).

single scheme or plan" or "[a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a)(1), (2). If multiple offenses are properly joined, they "shall be consolidated for trial unless the court orders severance pursuant to [CrR] 4.4." CrR 4.3.1(a).

"Severance" refers to dividing joined offenses into separate charging documents. CrR 4.4(b) Severance may be ordered on a party's motion where "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." *Id.* A party must generally move for severance pretrial and renew a denied pretrial motion for severance "before or at the close of all the evidence." CrR 4.4(a)(2). If the party does not timely make or renew a severance motion, "[s]everance is waived." CrR 4.4(a)(1), (2); *see State v. Wilcoxon*, 185 Wn.2d 324, 328 n.2, 373 P.3d 224 (plurality opinion), *cert. denied*, 137 S. Ct. 580 (2016); *State v. Bryant*, 89 Wn. App. 857, 864-65, 950 P.2d 1004 (1998).

The parties agree that because Bluford did not renew his pretrial motion for severance, the only issue before this court is whether the trial court properly granted the State's motion for joinder.

2.      Likely undue prejudice to the defendant must be considered in joinder

The State contends that we should review only whether joinder was allowable in accordance with the plain language of CrR 4.3(a). According to the

6

State, the likelihood of undue prejudice to the defendant is not relevant to this inquiry; prejudice may be considered only on a motion to sever. However, the State's approach conflicts with our precedent. Ever since Washington first allowed for the joinder of offenses, our courts have recognized the close relation of joinder and severance, and have held that joinder should not be allowed in the first place if it will clearly cause undue prejudice to the defendant.

Before the enactment of the Superior Court Criminal Rules, joinder and severance of offenses were governed by the same statute, now codified as RCW 10.37.060. *See* LAWS OF 1925, Ex. Sess., ch. 109, § 1. Pursuant to the statute, offenses could be joined if doing so would not prejudice the defendant's substantial rights and a trial court's determination on joinder was reviewed for abuse of discretion. *State v. Brunn*, 145 Wash. 435, 437-38, 260 P. 990 (1927). Shortly after the Superior Court Criminal Rules were adopted, this court held that

> CrR 4.3 is a liberal joinder rule. CrR 4.3 did not supersede RCW 10.37.060 and the two are consistent. We have held that RCW 10.37.060 gives the trial court considerable discretion in matters such as joinder of offenses. *State v. McDonald*, 74 Wn.2d 563, 445 P.2d 635 (1968). The same rule applies to CrR 4.3.

*State v. Thompson*, 88 Wn.2d 518, 525, 564 P.2d 315 (1977), *overruled on other grounds by State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992).

*Thompson* thus clearly states that joinder pursuant to CrR 4.3 is substantially similar to joinder pursuant to RCW 10.73.060, which requires "'that the court must

not permit the defendant to be embarrassed in his defense by a multiplicity of charges embraced in one indictment'" and "'invest[s the trial court] with such discretion as enables it to do justice between the government and the accused.'" *Brunn*, 145 Wash. at 437-38 (quoting *Pointer v. United States*, 151 U.S. 396, 400, 14 S. Ct. 410, 38 L. Ed. 208 (1894)). Therefore, pursuant to *Thompson*, the likelihood of undue prejudice to the defendant is not only relevant to motions for severance, it must also be considered when the State moves for joinder.

We have not directly revisited that question in the 40 years since *Thompson*. Instead, we have typically analyzed joinder and severance together. *See State v. Russell*, 125 Wn.2d 24, 62, 882 P.2d 747 (1994) (citing *State v. Smith*, 74 Wn.2d 744, 754-55, 446 P.2d 571 (1968), *vacated*, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972)). The Court of Appeals, however, has considered cases like this one, in which the defendant preserved an objection to joinder but waived a motion to sever. *See, e.g., Bryant*, 89 Wn. App. at 864-65; *State v. Culver*, 36 Wn. App. 524, 529, 675 P.2d 622 (1984). Two different approaches have emerged.

The State's proposed approach has been endorsed by Division Two, which observed that "the Washington Supreme Court has blurred the distinction between joinder and severance so carefully drawn in federal law." *State v. Wilson*, 71 Wn. App. 880, 886, 863 P.2d 116 (1993), *rev'd in part on other grounds*, 125 Wn.2d 212, 883 P.2d 320 (1994); *see also State v. Hentz*, 32 Wn. App. 186, 189, 647 P.2d

8

39 (1982), *rev'd in part on other grounds*, 99 Wn.2d 538, 663 P.2d 476 (1983).

Division Two based its analysis on a Second Circuit case interpreting the Federal

Rules of Criminal Procedure. *Wilson*, 71 Wn. App. at 885 (quoting *United States

v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)). Division Two did not identify the

source of its authority to reject our controlling precedent in favor of the Second

Circuit's approach.

Division One, meanwhile, has explicitly rejected the approach adopted by

Division Two:

> To the extent that the distinction between review of joinder and
> severance issues may have become blurred, we believe it is because
> the potential for prejudice must be considered in determining, in
> advance of trial, whether joinder is proper as a matter of law, and
> because actual prejudice must be considered in determining, at the
> appellate level, whether joinder was proper as a matter of law. Thus,
> even if joinder is legally permissible, the trial court should not join
> offenses if prosecution of all charges in a single trial would prejudice
> the defendant.

*Bryant*, 89 Wn. App. at 865 (citing *United States v. Peoples,* 748 F.2d 934, 936

(4th Cir. 1984); 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL

PRACTICE AND PROCEDURE § 1717, at 354 (2d. ed. 1997); *Culver*, 36 Wn. App. at

529; *Bayless v. United States,* 381 F.2d 67, 72 (9th Cir. 1967)). Division Three has

not weighed in as clearly, but its position appears closer to that of Division One.

*State v. Pleasant*, 21 Wn. App. 177, 181-82, 583 P.2d 680 (1978).

We now explicitly adopt Division One's approach and disapprove of Division Two's. Division One's approach is more consistent with our precedent and the fundamental principle that "the joinder of counts should never be utilized in such a way as to unduly embarrass or prejudice one charged with a crime, or deny him a substantial right." *Smith*, 74 Wn.2d at 754-55. It also reflects the reality, made clear by the record in this case, that pretrial joinder and severance are often "six of one, half dozen of the other" because the issues are so closely related. Verbatim Report of Proceedings (June 23, 2014) (VRP) at 4.

The State, however, argues that considering prejudice to the defendant at the joinder stage makes the severance rules "redundant" and "eviscerates CrR 4.4's requirement that a defendant renew a motion to sever at the close of all the evidence in order to preserve the issue for appeal."[4] Suppl. Br. of Resp't at 10, 11 n.5. We disagree with both contentions.

First, where multiple charges are originally brought in a single charging document, the State has no need to bring a joinder motion to the court. In that situation, the severance rules are not at all redundant; they are the only means by

---

[4] At oral argument, the State also contended that joinder should never be unduly prejudicial in pretrial matters, so there is no need to consider prejudice at the joinder stage, even though joined offenses are presumptively tried together unless they are later severed. CrR 4.3.1(a). Judicial economy in pretrial matters may certainly be considered when balancing the benefits of joinder against the risk of prejudice to the defendant. However, whether it is better in a particular case to object to joinder in the first instance or to move for severance at a later time (or to do both) is a strategic decision best made by defense counsel.

which a defendant can secure separate trials on the charged offenses. Second, where we are reviewing only pretrial joinder, we review only the facts known to the trial judge at the time, rather than the events that develop later at trial. After all, a judge cannot abuse his or her discretion based on facts that do not yet exist. Any prejudice that emerges over the course of the trial must still be addressed in a motion for severance that is timely raised and renewed. CrR 4.4(a)(2).

We therefore hold that joinder pursuant to CrR 4.3(a) should be liberally allowed where the charged offenses "(1) [a]re of the same or similar character, even if not part of a single scheme or plan; or (2) [a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." However, we agree with the Court of Appeals holding in *Bryant* that our precedent does not allow joinder "if prosecution of all charges in a single trial would prejudice the defendant." 89 Wn. App. at 865. We review a trial court's joinder decision for abuse of its "considerable discretion." *Thompson*, 88 Wn.2d at 525.

As in other contexts where trial courts are asked to exercise discretion, a court considering a pretrial joinder motion should conduct its analysis on the record to ensure that its "exercise of discretion was based upon a careful and thoughtful consideration of the issue." *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). After identifying whether joinder is allowable in accordance with

11

CrR 4.3(a)(1) or CrR 4.3(a)(2), the court should balance the likelihood of prejudice to the defendant against the benefits of joinder in light of the particular offenses and evidence at issue and carefully articulate the reasoning underlying its decision.

> 3. Judicial economy is relevant to joinder but cannot outweigh a defendant's right to a fair trial

Bluford challenges our precedent holding that judicial economy may be considered and weighed against the possibility of prejudice to the defendant. *See, e.g., State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990); *Smith*, 74 Wn.2d at 755. According to Bluford, "[n]o Washington court has ever explained why the principle is sound." Suppl. Br. of Pet'r at 8. However, we have explained that judicial economy is a relevant consideration because "'[t]he justification for a liberal rule on joinder of offenses appears to be the economy of a single trial.'" *Smith*, 74 Wn.2d at 755 (quoting *Drew v. United States*, 118 U.S. App. D.C. 11, 14, 331 F.2d 85 (1964)). In other words, if judicial economy is irrelevant, the justification for joinder disappears, and defendants would essentially be entitled to separate charging documents and trials on each alleged offense as a matter of right. This was the law in early statehood, LAWS OF 1891, ch. 28, § 24, but Washington abandoned that approach long ago, LAWS OF 1925, Ex. Sess., ch. 109, § 1.

To be sure, if joinder will cause clear, undue prejudice to the defendant's substantial rights, no amount of judicial economy can justify requiring a defendant

to endure an unfair trial. However, where the likely prejudice to the defendant will not necessarily prevent a fair trial, "'the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.'" *Smith*, 74 Wn.2d at 755 (quoting *Drew*, 118 U.S. App. D.C. at 14).

    4.    Joining the charges against Bluford caused him undue prejudice

There are four factors to consider when determining whether joinder causes undue prejudice: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *Russell*, 125 Wn.2d at 63. Bluford focuses primarily on the cross admissibility of the evidence pursuant to ER 404(b). We agree with Bluford that, on this record, the trial court abused its discretion.[5]

ER 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[5] We hold only that joining all nine of the charges against Bluford was an abuse of discretion. We express no opinion on whether joinder of only some of the charges would be allowable, and we leave it to the parties and the trial court to resolve that question on remand, if necessary, in a manner consistent with this opinion.

13

The court in this case determined that evidence of all the charges was cross admissible pursuant to ER 404(b) to show identity based on modus operandi.[6] "This Court reviews decisions to admit evidence under ER 404(b) for abuse of discretion." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "In doubtful cases, the evidence should be excluded." *Id.*

> When evidence of other bad acts is introduced to show identity by establishing a unique modus operandi, the evidence is relevant to the current charge "only if the method employed in the commission of both crimes is 'so unique' that proof that an accused committed one of the crimes creates a high probability that he also committed the other crimes with which he is charged."

*Id.* at 643 (quoting *Russell*, 125 Wn.2d at 66-67). The offenses must share "distinctive features" that "establish signature-like similarity." *Id.* To determine whether the offenses meet this test, we consider what, if any, distinctive features the offenses share, and how the offenses differ from each other. *Id.* at 645; *Smith*, 106 Wn.2d at 779.

"[G]eographical proximity and commission of the crimes within a short time frame" may be considered. *Vy Thang*, 145 Wn.2d at 643. Offenses occurring "on the same day or in close proximity" are much more probative of identity than offenses sharing only "very *general* similarities . . . with respect to the time, manner and location of the crimes." *Smith*, 106 Wn.2d at 779. The court here

---

[6] The trial court also found the charges would be cross admissible to show common scheme or plan, but the State argues only the identity theory on review.

believed that geographical proximity and a short time frame were implicated in Bluford's case:

> These alleged offenses occurred just under a two-month period of time. . . .
> . . . [T]hree of the last four, two of them occurred on the same day on March 14th, one of them was March 10th, all of them in the dark hours. . . .
> . . . .
> They all occurred in the Seattle Metro area, four of them in Renton, one in Bellevue, one in Seattle, and one in Shoreline. All of them occurred in a residential area.

VRP at 45. However, occurring at night over a two-month time span in residential areas within the large Seattle metropolitan area are much more general similarities than distinctive attributes.

Courts also consider "whether the similarities between the two crimes are unusual or distinctive" insofar as how the crimes were carried out. *Vy Thang*, 145 Wn.2d at 644. The court in this case noted that the victims were "apparently . . . stranger[s]" to the perpetrator, and all the cases "involved the victim just getting out of a car and being by themselves." VRP at 45-46. Furthermore, "[i]n all of the cases, there was allegedly a gun displayed, and in all of them there were verbal demands made." *Id.* at 46. And in each case, "[t]he property taken was very similar, which is small portable items that individuals generally have on their person, such as wallets, cell phones, and purses." *Id.* at 50.

15

While these are similar features, they are not unusual or distinctive. Robbing a stranger who is alone and not on guard is not distinctive. And displaying a weapon, demanding valuable items, and taking available valuable items from a person are features common to many armed robberies. There was nothing particularly distinctive noted about the gun except that it was always a handgun, which is hardly an unusual weapon. *See District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). These general similarities, even in combination, do not establish a modus operandi. *Cf. Vy Thang*, 145 Wn.2d at 644 ("Thus, in a case where a robber entered the store, pulled a knife, asked for money and fled upon receiving it, the Court of Appeals held that although the crimes were similar, the shared features were not sufficiently unusual or unique to amount to a signature.").

Finally, similar descriptions of the perpetrators, such as "wearing similar clothing," may be considered. *Id.* at 643. The court here noted that "[a]ll of the victims identified a black male perpetrator" and, of the charges that included a witness description of the car, "although the colors differed slightly . . '. it's generally described as a Honda-type car." VRP at 46, 50. But being a black male is not a distinctive physical feature, and Hondas are very common.

Thus, the similarities between the charges are much more general than distinctive. "The manner in which each robbery was committed here is not unique.

Any general similarities between the two crimes 'might have been as much due to coincidence as to modus operandi.'" *Bythrow*, 114 Wn.2d at 720 (quoting *Smith*, 106 Wn.2d at 779).

Moreover, the differences between the charges were notable, particularly as to the two robberies accompanied by sexual offenses. None of the other robbery victims was allegedly subjected to a sexual offense, and even the two sexual offenses charged were very different from each other. In one case, the robber put his hand in the victim's underwear, ostensibly to search for money. In the other case, the robber pushed the victim into her garage, forcibly removed her pants, penetrated her vagina with his fingers, then grabbed her by the hair and forced his penis in her mouth. No other victim was subjected to anything like that.

In light of "the existence of these marked dissimilarities, and the absence of any distinctive similarities," we hold that the trial court abused its discretion in holding that evidence of all the charges would be cross admissible as to all the others to prove identity by modus operandi.[7] *Smith*, 106 Wn.2d at 779; *cf. State v. Foxhoven*, 161 Wn.2d 168, 177, 163 P.3d 786 (2007) (admitting evidence of

---

[7] The State also argues that the evidence was cross admissible to show identity even if modus operandi was not established because there was evidence that many of the stolen items were found in places that had a connection to Bluford or his girlfriend. Br. of Resp't at 33. However, the State does not cite any case supporting the notion that absent modus operandi, evidence of multiple offenses is cross admissible to prove identity based solely on the fact that there is similar evidence linking the defendant to many of the offenses.

17

graffiti because, even though they were stylistically different, they all used distinctive "tags," which "are akin to signatures"); *State v. Laureano*, 101 Wn.2d 745, 765, 682 P.2d 889 (1984) (forced-entry residential burglaries occurring within three weeks of each other, with similar use of a 20-gauge shotgun and perpetrators dressed in Army fatigues), *overruled in part on other grounds, State v. Brown*, 113 Wn.2d 520, 529, 782 P.2d 1013, 787 P.2d 906 (1989).

The mere fact that evidence is not cross admissible does not automatically preclude joinder. *Bythrow*, 114 Wn.2d at 720. To establish error, Bluford must also show that the prejudicial effect of trying all the counts together outweighed the benefits of joinder. *Id.* at 722. In this case, he makes that showing. We have previously noted "the inherently prejudicial effect of prior sexual offenses." *Id.* at 718-19. Moreover, because the evidence was not cross admissible, the interest in judicial economy loses much of its force because the State would not have been required (or allowed) to call all of its witnesses in each separate trial.

When a defendant is charged with multiple offenses, the offenses may be joined only if the offenses satisfy CrR 4.3(a) and joinder is not likely to cause undue prejudice to the defendant. In this case, the trial court abused its discretion because the likely prejudice to Bluford outweighed concerns for judicial economy. We therefore reverse Bluford's convictions and remand for further proceedings consistent with this opinion.

B.    Persistent offender sentence

Although we reverse Bluford's convictions, we briefly address the issue of whether the State established that Bluford's New Jersey robbery conviction was legally comparable to a most serious offense in Washington for purposes of the persistent offender sentencing statute, RCW 9.94A.570. We affirm the Court of Appeals holding that it did not.[8]

A persistent offender is an individual who (1) has been convicted in Washington "of any felony considered a most serious offense" and (2) has "been convicted as an offender on at least two separate occasions" in any state for offenses that, in accordance with Washington law, "would be considered most serious offenses." RCW 9.94A.030(38)(a). A court's determination of whether an out-of-state conviction is legally comparable to a most serious offense in Washington is reviewed de novo.[9] *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007). An out-of-state conviction is legally comparable if "the elements of the foreign offense are substantially similar to the elements of the Washington offense." *Id.* at 415.

---

[8] This opinion does not prevent the State from presenting more or different evidence of Bluford's New Jersey conviction if Bluford is eventually convicted of a most serious offense on remand and the State chooses to seek a persistent offender sentence.

[9] On review, the State argues only legal, not factual, comparability.

At issue here is the legal comparability of Bluford's 1994 conviction for second degree robbery in New Jersey. New Jersey law defines "robbery" as follows:

> **a. Robbery defined.** A person is guilty of robbery if, in the course of committing a theft, he:
> (1) Inflicts bodily injury or uses force upon another; or
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> . . . .
>
> **b. Grading.** Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

N.J. STAT. § 2C:15-1.

The record shows that Bluford was originally indicted for first degree robbery, apparently pursuant to N.J. Stat. § 2C:15-1(a)(2). CP at 316 ("in the course of committing a theft, [Bluford] did threaten immediate bodily injury to [the victim] and/or did purposely put [the victim] in fear of immediate bodily injury while armed with and/or threatening the immediate use of [a] deadly weapon"). However, Bluford ultimately pleaded guilty to one count of second degree robbery, and there is no amended charging document in the record. Bluford's judgment specifies that the conviction was pursuant to N.J. Stat. § 2C:15-1, but does not state which subsection of that statute applied. This is problematic.

We assume, without deciding, that N.J. Stat. § 2C:15-1(a)(1) and (a)(2) may be legally comparable to second degree robbery, a most serious offense in Washington. RCW 9.94A.030(33)(o) (listing second degree robbery as a most serious offense); RCW 9A.56.190 ("A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone."), .210(1) ("A person is guilty of robbery in the second degree if he or she commits robbery."). N.J. Stat. § 2C:15-1(a)(3), however, clearly is not; it contemplates a robbery conviction based on a theft accompanied by "*any* crime of the first or second degree," regardless of whether force, violence, or injury is inflicted or threatened. (Emphasis added.) We cannot determine which subsection of N.J. Stat. § 2C:15-1(a) applied to Bluford's conviction without looking to the facts underlying that conviction.

We agree with the State that the question of whether we can consider facts underlying a foreign conviction cannot be resolved merely by distinguishing between whether the information was spoken or written. *See* Answer to Pet. for Review & Cross-Pet. at 12-13. However, in order to preserve due process and the right to jury trial, "[a]ny attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the

21

finder of fact beyond a reasonable doubt in the foreign conviction, proves

problematic." *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837

(2005). Therefore, in a comparability analysis we may consider only those

underlying facts that were "admitted, stipulated to, or proved beyond a reasonable

doubt." *Thiefault*, 160 Wn.2d at 415.

The State argues that the documentation it submitted establishes that

Bluford's conviction was pursuant to N.J. Stat. § 2C:15-1(a)(2) and thus

comparable to a most serious offense. We find that documentation insufficient.

Bluford certainly did not admit or stipulate to his original indictment because he

pleaded guilty to a different offense. The only other information we have about

what crime Bluford was convicted of are the judge's stated reasons for accepting

Bluford's guilty plea. It is not clear from the record whether Bluford admitted or

stipulated to those facts, and, more importantly, they do not actually track the

elements of N.J. Stat. § 2C:15-1(a)(2).[10]

The New Jersey judge noted that "[t]his offense occurred when defendant

and a juvenile accomplice committed an armed robbery during the course of which

---

[10] We do not mean to suggest that a judge's statements regarding the facts underlying a prior foreign conviction can never be considered. The relevant inquiry is not who made the factual statements, but whether the source of those statements is sufficiently reliable and whether the facts themselves were "admitted, stipulated to, or proved beyond a reasonable doubt." *Thiefault*, 160 Wn.2d at 415; *cf. In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 568-69, 243 P.3d 540 (2010) (considering evidence of a prior Washington conviction).

they stole $85.00 and a ring having great sentimental value to the victim. The weapon, which the victim believed to be a 9 mm handgun was in fact a B.B. gun." CP at 310. These statements do not establish that the victim was threatened or purposefully put in fear of immediate bodily injury as required for N.J. Stat. § 2C:15-1(a)(2). And use of a deadly weapon (or what appeared to be a deadly weapon) is not an element of second degree robbery in New Jersey. *See* N.J. STAT. § 2C:15-1(b) ("Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor . . . is armed with, or uses or threatens the immediate use of a deadly weapon.").

Based on the record presented, we know only that Bluford necessarily admitted to (1) committing a theft and (2) at least one of the three possible criteria that would elevate that theft to a robbery pursuant to N.J. Stat. § 2C:15-1(a)(1)-(3). We do not know which one, and if it was N.J. Stat. § 2C:15-1(a)(3), Bluford's conviction was not legally comparable to a most serious offense in Washington. We therefore affirm the Court of Appeals on this issue.

## CONCLUSION

We take this opportunity to reaffirm that likely undue prejudice to the defendant is relevant to determining whether pretrial joinder pursuant to CrR 4.3(a) should be granted over a defendant's objection. Joining all nine charges in this

23

case was an abuse of discretion. We therefore reverse the Court of Appeals and

remand to the trial court for further proceedings consistent with this opinion.

_Yu, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_Gerald McUld, J._

_González, J._